## STATE v. WILSON.

No. 7227.   Decided April 6, 1950.   (216 P. 2d 630.)

See 40 C. J. S., Homicide, sec. 11.  Homicide of trespasser, see note, 34 A. L. R. 1488.  See, also, 26 Am. Jur. 272.

*McCullough, Wilkinson & Boyce,* Salt Lake City, for appellant.

*George S. Ballif,* District Attorney, Provo, *Clinton D. Vernon,* Attorney General, *A. John Brennan,* Salt Lake City, for respondent.

McDONOUGH, Justice.

Defendant was charged with second degree murder, convicted of involuntary manslaughter, and he appeals. His principal assignments of error allege: (1) That there was not sufficient competent evidence to warrant submission of the case to the jury; and (2) that the trial court misdirected the jury in giving instructions covering the crime of involuntary manslaughter.

The victim of the crime charged, was a Navajo Indian who died from a wound inflicted by a bullet from defendant's .22 rifle on July 25, 1947. The facts surrounding the killing, are here detailed.

Defendant owned a small farm near Rio in Spanish Fork canyon adjoining the Denver & Rio Grande Western Railroad Company mainline right-of-way, in Utah County. He had resided there since 1942, with his wife and mother. In 1943 the railroad commenced the making of certain changes in the track and roadbed, and for that purpose brought in section crews consisting mainly of Indians and Mexicans. There was a section camp established about a half mile to the east, where toilet facilities were provided. The railroad failed to provide such facilities elsewhere in the vicinity. Consequently, some of the section hands made a practice of coming onto defendant's land for toilet purposes, and promiscuously deposited human excreta on different portions of the land. On many occasions defendant drove them out, but some of them continued their practices on different portions of his land. Defendant complained to railroad officials, and for a while, through the cooperation of certain supervisory employees, the difficulty ceased. In 1944 there was a recurrence, and one witness for the prosecution testified that defendant shot at a section hand on

such occasion. Defendant denied this and testified that at the time in question he was shooting rabbits. On one occasion defendant complained to a section foreman because some of the Indians were performing acts of elimination within sight of his wife and 16 year old daughter.

In 1946, there were some arguments between defendant and one of the railroad section supervisors who testified as a witness for the state. This witness testified that defendant threatened to put a bullet hole through any person who came upon his land and engaged in such filthy practices. Defendant denied that he made any such threats, but he testified that he said he was going to put a stop to such conduct, and he had in mind getting the sheriff to come to his place. The alleged threat was in October 1946, and was some 9 months prior to the shooting which resulted in the death of the Indian. On July 23, 1947, when about 150 Indians were working in the vicinity of this land, defendant again complained to the section foreman and insisted that the workmen be kept off his premises; but the foreman said it was impossible to keep them off. According to defendant's testimony, the foreman stated that defendant would just have to put up with the situation as long as those men were working there.

On July 24, 1947, after defendant had driven some of the Indians from his land, he attempted to get the sheriff to come to his place; but the sheriff failed to arrive. On the morning of July 25, 1947, defendant saw the section crew come into the area at about 7:30 a. m., and he saw groups of them come on his land. Human excreta was found in his culinary ditch where he washed the squash, near an open well, and in his orchard. Some time previously defendant had found some Indians working as section crewmen stealing apples in his orchard.

On the day of the fatal shooting, according to defendant's testimony, he complained to the section foreman with whom he had had some arguments previously, and after some hos-

tile remarks by the foreman, the Indians came onto his land in larger numbers. Two other railroad employees, one a conductor and the other an operator of one of the machines used in the vicinity, came onto defendant's land to get some water from his well in accordance with permission previously given. They talked to defendant, gave him some cigarettes, and noticed that he had a rifle in his hand. They asked what he was going to do with the rifle, and defendant stated that he was going to give the Indians a scare, to keep them off his place. Defendant held the gun in sight of some of the Indians who had just come through the fence, and they left. Defendant walked over to a point near the door to his vegetable cellar, after the two men left his premises, and according to his statement he decided to shoot in a direction away from where he saw the Indians. He said he fired a shot into the bank, and fearing that it might get too close to his pasture where he had some horses, he fired another shot on the other side of a tree. He saw someone flash by in his line of vision, then he heard a yell, and subsequently saw someone fall near the fence. The victim of the shot proved to be one of the section hands, who died after being taken to a hospital.

Appellant's assignment of error challenging the sufficiency of the evidence to support the verdict and a number of the alleged errors of the court below in his instructions to the jury, as well as some relating to the refusal of the court to instruct as requested by defendant, will be discussed together since they deal with the same question of law.

In one of the instructions, the court, after setting out the elements of the crime of involuntary manslaughter, stated:

"* * * but if you do find from the evidence, beyond reasonable doubt, that in firing the said shot the defendant did so with such lack of care and caution, under all of the facts and circumstances as shown by the evidence in the case, a reasonable and prudent person would exercise, and that the deceased was killed thereby, then the defendant is guilty of involuntary manslaughter * * *."

The jury was further instructed as follows:

"By 'due care and caution', as used in these instructions is meant such care and caution as a reasonable person would exercise under all of the facts and circumstances as shown by the evidence."

The challenge of defendant to the sufficiency of the evidence in the case and to the correctness of the quoted instructions of the court are sufficiently set out in two portions of his brief. As to the sufficiency of the evidence, the appellant states:

"* * * The only issue that could possibly be raised with reference to the action of the defendant is one of simple negligence, or negligence as defined in a civil case. The issue of simple negligence should not have been an issue in the case and the court's definition of the expression, 'without due caution and circumspection' was unfortunate and manifestly erroneous in its application to the crime of involuntary manslaughter * * *."

In support of the position indicated, the case of *State* v. *Lingman,* 97 Utah 180, 91 P. 2d 457, 466, is cited. In discussing this case, counsel for appellant argues that it holds that the negligence required as a basis of the crime of involuntary manslaughter must be criminal negligence, and that criminal negligence is therein defined as meaning "more than a mere thoughtless omission or slight deviation from the norm of prudent conduct," but involves "reckless conduct or conduct evincing a marked disregard for the safety of others." The case of *State* v. *Lingman,* supra, in which this court spoke through Mr. Justice Wolfe, was one in which careful and painstaking thought was devoted to the delineation of the crime of involuntary manslaughter as defined by the statutes of this state, and to the manner in which the types of involuntary manslaughter as defined by these rather ancient statutes could be articulated with the duties of automobile drivers under our modern statutes regulating the conduct of such drivers. It was written with special care to the end that the bar and the trial courts might be adequately advised as to concepts relative to which

there had theretofore been much uncertainty and some conflict of opinion. Nevertheless, despite what was considered unclouded exposition, we have found on several occasions that the case has been cited to sustain positions taken which are clearly at variance with the law as therein expounded. We are of the opinion that counsel for the appellant has done just that in this case.

Section 103-28-5, U. C. A. 1943, defines manslaughter as of two kinds—voluntary and involuntary. Involuntary manslaughter is defined to be the killing of a human being without malice,

"in the commission of an unlawful act not amounting to a felony, or in the commission of a lawful act which might produce death, in an unlawful manner or without due caution and circumspection."

In the *Lingman* case, the writer thereof first discusses the portion of the definition dealing with an unlawful act not amounting to a felony. After pointing out that in some jurisdictions the unlawful acts which might be made the basis of an involuntary manslaughter conviction must be acts *malum in se,* the opinion then goes on to hold that while misdemeanors which are *malum in se* would be enough to support the charge if such act were the cause of death, it also held that some acts *malum prohibitum* might also lay the basis for a manslaughter charge and conviction. It was in connection with such discussion that the statement was made that

"criminal negligence therefore sufficient to satisfy arm (a) of the manslaughter definition means more than mere thoughtlessness or slight carelessness. It means reckless conduct or conduct evincing a marked disregard for the safety of others."

The opinion then discusses the other portion of the definition which deals with a lawful act which might produce death done in an unlawful manner or without due caution and circumspection. Relative to that part, the opinion states:

"* * * It will be noted that in this arm the act done contains the ingredient of 'might produce death.' Theoretically any act might produce death. A slight scratch of a pin 'might' produce death. We construe the phrase to mean 'fraught with potentialities for producing death', illustrations of which are the running of a car at high speed, however carefully, handling of loaded arms, explosives, deadly germs, etc.

"The distinct characteristic then of arm (b) is that the act must be one which has knowable and apparent potentialities for resulting in death. If such an act is done in an unlawful manner or without due care and circumspection, the criminal negligence is present. In other words, a dangerous act done in an unlawful manner or even with lack of the care which such an act calls for is done with criminal negligence. It does not require reckless handling or conduct evincing marked disregard for the safety of others. The ingredient of intrinsic dangerousness, plus the unlawful manner or *the lack of due care and circumspection demanded by the nature of the act, even be that slight,* constitutes criminal negligence. * * *" (Italics added.)

It is quite apparent from the foregoing that counsel have misread the case on which they rely, and that most of the court's opinion to which counsel refer in support of their position, is not applicable to the facts of this case, nor the instructions of the court relative thereto. This quotation itself sufficiently answers the criticism of the instructions of the court relative to the meaning of the phrase "due caution and circumspection." The case was submitted by the trial court on the theory that the mere firing of a gun by defendant on his own land was not an illegal act. In fact, the court correctly charged the jury to that effect. The question submitted to the jury on the offense of involuntary manslaughter was whether in firing the gun defendant acted with due caution and circumspection. The court further instructed that if due care and circumspection were used by defendant, he had a lawful right to fire his gun for the purpose of frightening away trespassers.

As to the contention made by the defendant that the evidence does not support the verdict, his argument relative

thereto is predicated upon his erroneous reading of the *Lingman* case. We shall discuss the evidence briefly to determine its sufficiency under the instructions of the court which we hold correctly states the law. When defendant fired the two shots, he was fully aware of the fact that there had been trespassers on various portions of his property and that some were known by him to be on the premises at the time he fired the fatal shot. At the point towards which he fired, there were trees and brush which obstructed his view.

Where one fires a lethal weapon into an area where persons who might be there may be obscured from vision, and it is known to him that people are in the vicinity and indeed that they might be hiding from view, there is certainly presented for the jury a question of fact ■ as to whether or not the person so acting did so with due caution and circumspection, if indeed it does not present a question of marked disregard for the safety of others. Unquestionably, the shooting of the gun was an act which was "fraught with potentialities for producing death." It is true that the actions and conduct of the trespassers were aggravated and defiant, but that fact would not relieve appellant of the duty of using due caution and circumspection when he used a lethal weapon to frighten off the intruders. Consequently, there was no error committed by the court below in refusing to direct a verdict for defendant.

Only one other assignment need be considered. This assignment is to the effect that the court erred in failing to instruct the jury on the doctrine of proximate cause, but on the contrary, that the court's instructions indicate that the court assumed that the shooting of the deceased was the proximate cause of death. This assignment is primarily based upon the fact that medical testimony was adduced to the effect that there was a question as to whether or not the wound suffered by the deceased would have been

fatal had he been given timely and proper medical and hospital attention. We think this assignment is without merit. The trial court on this phase of the case gave the following instruction:

"Evidence has been introduced in this case tending to show that after deceased Ray Phillips was injured, other persons that the defendant may have been negligent in caring for his injury, and that such negligence may have had some effect in his death.

"In this connection you are instructed that mere negligence in caring for a person who has received a fatal wound at the hands of another does not constitute a defense for the one inflicting such fatal wound. That is to say, if the evidence proves to your satisfaction beyond reasonable doubt that at the time and place in question the defendant inflicted a mortal wound upon the deceased, in such a manner or under such circumstances as to constitute the crime of murder in the second degree, voluntary manslaughter, or involuntary manslaughter, as defined in these instructions, you would not be justified in returning a verdict of not guilty upon such charge as had been proven to your satisfaction beyond a reasonable doubt, merely because the evidence also proved that someone was negligent in caring for the deceased after infliction of his mortal wound, even though you may feel that by exercise of reasonable care, death may not have resulted therefrom."

It cannot be contended here that the first aid or medical care given to Ray Phillips following the shooting, rather than the wound from the bullet fired by defendant, was the efficient cause of death. It is to be noted in the challenged instruction that the court stated

"if the evidence proves to your satisfaction beyond reasonable doubt that at the time and place in question the defendant inflicted a mortal wound upon the deceased,"

indicating that there must have been a direct causal connection between the wound inflicted and decedent's death. That being so, the other part of the instruction was not objectionable, in that one who illegally inflicts a wound or hurt upon another—which is the primary cause of his death —cannot escape liability therefor, simply because careful and skillful administration of aid might have averted

the fatal consequences. See 26 Am. Jur. p. 193, par. 51. The assignment of error is overruled.

From what has been said, it follows that the judgment below must be affirmed. It is so ordered.

PRATT, C. J., and WOLFE, and LATIMER, J., concur.

WADE, Justice (dissenting).

I cannot agree that the court did not err in instructing the jury to return a verdict of guilty if they found that he failed to use only ordinary care in discharging the gun in this case. In my opinion, in all criminal cases where negligence is an element of the crime, it requires criminal negligence and ordinary negligence is not sufficient to constitute the crime. This is true where the use of a deadly or lethal weapon is involved as in other criminal cases.

In *State* v. *Lingman,* 97 Utah 180, 91 P. 2d 457, 465, we subdivided the provision of the involuntary manslaughter statute into two arms and four categories in the following language:

"Involuntary manslaughter is the unlawful killing of a human being without malice in the commission of (a) an unlawful act not amounting to a felony, or (b) in the commission of a lawful act which might produce death (1) in an unlawful manner or (2) without due caution and circumspection."

And we concluded therefrom that:

"* * * In manslaughter cases the charge may embrace the causing of death (1) in the commission of an unlawful act not amounting to a felony but malum in se; (2) in the commission of an unlawful act not amounting to a felony malum prohibitum, but of such a sort as to involve a marked disregard for the safety of others or recklessness (both of the above come under arm (a) * * * (3) in the doing of an act fraught with apparent danger to human life when such act is done in an unlawful manner; (4) in the doing of the same sort of an act without the care or circumspection such an act would demand from a prudent person."

In the *Lingman* case and many other later cases (see *State* v. *Barker,* 113 Utah 514, 196 P. 2d 723 and cases therein cited) we held that under arm (a) (2) the killing of a human being in the commission of a malum prohibitum unlawful act requires in addition thereto a reckless or marked disregard for the safety of others. However, in the *Lingman* case we stated that under arm (b), since the statute requires the additional ingredient that the act "might produce death" that a marked or reckless disregard for the safety of others is not necessary but only ordinary negligence is required to convict of involuntary manlaughter. Category (4) a killing of a human being in the commission of an act fraught with apparent danger to human life without due caution and circumspection covers this case. In my opinion, the distinction above pointed out is not tenable and involves a misconception of the nature of the standards or degrees of negligence which determines whether a given case comes within ordinary negligence or recklessness.

In this discussion, for clear thinking, we must keep in mind that the terms "standards or degrees of negligence" is a different concept than that expressed by the term "degree of care." There are two standards or varying degrees of negligence (1) Ordinary negligence, which is the failure to use the care which an ordinary prudent person would use under the circumstances of the case. (2) Criminal negligence, which is to act in a reckless or marked disregard for the safety of others. In all cases, the same degree of culpability, wrongfulness and departure from the normal prudent human actions are required, but the degree of care required to bring a case within either of these standards of negligence varies with the facts and circumstances of each case. The degree of care required to avoid being guilty of either ordinary negligence or gross negligence varies with the amount of danger involved in the doing of the act under the facts and circumstances and is not a fixed degree or amount which applies to all cases. It is de-

termined by the exigencies of the particular facts and circumstances of each case. So the failure to use ordinary care requires the same degree of culpability in all cases whether the act is fraught with potentialities for causing death or not, and the same is true of criminal negligence. The degree of culpability required to commit any given crime should always be the same regardless of what the facts and circumstances of the case are.

Section 103-1-19, U. C. A. 1943, provides:

"In every crime or public offense there must exist a union or joint operation of act and intent, or criminal negligence."

This section requires in every crime the element of an intention to do a wrongful act or a substitution therefor, criminal negligence. It is universally held that criminal negligence is something more than ordinary negligence or the negligence necessary to create a civil liability (see 40 C. J. S., Homicide, §.62, page 925). So where criminal negligence is a necessary element of involuntary manslaughter, something more is required than ordinary negligence, it requires a reckless or marked disregard for the safety of others. But if only ordinary negligence is required under arm (b) where the element of "might produce death" is necessary, then we do not require criminal negligence. I think it a misconception to hold that because an act is potentially dangerous, it constitutes criminal negligence where coupled with only ordinary negligence but requires recklessness to constitute criminal negligence where the act is not fraught with apparent potential danger.

I am also unable to see why a reckless disregard for the safety of others is required where the killing results from the doing of a lawful act under arm (b), the same as where it results from the doing of an unlawful act under arm (a) (2). It would seem that if there is any difference, a greater degree of negligence should be required in order to constitute manslaughter where the killing results from the

doing of a lawful act, than where it results from the doing of an unlawful act. Otherwise, we place a premium on the violation of the law. In many jurisdictions it is held that a killing which results from the doing of an unlawful act under statutes similar to ours is sufficient to constitute manslaughter even though the greatest degree of care is exercised in doing such act and the act is done in such a manner that danger to others therefrom is not foreseeable, and therefore it is not negligently done. See 40 C. J. S., Homicide, § 57, pages 921, 922. If we consider only the wording of our statute, that is what it seems to expressly say. This matter will be further discussed later.

In the *Lingman* case we said that since both categories of arm (b) require the ingredient that the act committed "might produce death," it is not necessary under that arm to prove recklessness or a marked disregard for the safety of others, but only ordinary negligence is required to constitute criminal negligence. We there construed the term "might produce death" to mean "fraught with potentialities for producing death" or "has knowable and apparent potentialities for resulting in death." We said that such an act, even though lawful, where done in an unlawful manner or without due caution or circumspection, requires only the lack of ordinary care, but does not require recklessness or a marked disregard for the safety of others to constitute criminal negligence. The idea seemed to be that because of the knowable dangerous potentialities required under arm (b) and since the greater the potential danger of the act committed, the greater the care required to avoid injuring others, only ordinary negligence is necessary to constitute criminal negligence, but that since the statute does not expressly require the same dangerous potentialities in the act under arm (a) (2), recklessness is required to constitute criminal negligence under that arm and category. With this I cannot agree.

Where a killing is caused by the doing of an act fraught with great potential danger, greater care is required to

avoid ordinary negligence or recklessness than is required where the act is not apparently fraught with danger. But under each of these standards, that of ordinary care and of recklessness, the care required varies in each case in accordance with the danger presented under the existing facts and circumstances. An ordinary prudent person would use greater care to avoid an accident while he was handling a deadly weapon or high explosives, or in dealing with a dangerous situation, than he would where the situation presented little apparent danger. In all cases, the greater the danger, the greater the degree of care which is required in order to avoid being guilty either of ordinary negligence or recklessness. Within each of these standards of care, the degree of culpability of the party who violates such standard remains the same, regardless of whether the dangers are little or great. So if we hold, as suggested in the *Lingman* case, that recklessness is required under arm (a) (2) but only a lack of ordinary care is necessary under both categories of arm (b), we thereby require a greater wrong, a greater degree of culpability, and a greater departure from the norm of ordinary prudent action under the one arm, than we do under the other. This I think is obviously not the legislative intention.

That such a conception requires a greater degree of culpability in the one case than in the other is readily demonstrated by assuming a slight change in the facts involved in this case. Suppose that the defendant instead of firing a gun, as he did, to drive trespassers from his property, had merely thrown a light rubber ball in the direction which he fired the shots. In that case, if by some unforeseeable event, the decedent was killed, defendant would not be guilty of criminal negligence or involuntary manslaughter, not only because of the statutory requirement under arm (b) that the act committed must have the ingredient of being fraught with killing potentialities, but also because he would not be guilty of any negligence, either ordinary or extraordinary. Not because he used great care to prevent

the light rubber ball from striking the trespassers, but because even if it did strike them, there was no foreseeable danger that they would thereby be injured, and so there was no duty to use any care. In such case defendant could, without being guilty of negligence or subject to any liability either civil or criminal, throw the ball directly at the trespassers with the utmost reckless abandon as to whether it would strike them, or even with intention of striking them, but still because the act involved no inherent or foreseeable danger of causing harm, he would not be guilty of a failure to use ordinary care because an ordinary prudent man under these circumstances would not be required to use any care whatsoever to avoid striking the trespassers.

On the other hand, if the defendant instead of throwing a light rubber ball, had thrown and exploded a live hand grenade in the direction which he fired the shots, knowing that there were probably trespassers in that vicinity, his act might even be something more than ordinary negligence or even recklessness. It might constitute an "act greatly dangerous to the lives of others and evidencing a depraved mind, regardless of human life" under section 103-28-3, U. C. A. 1943, and would be murder in the first degree. But such an act, regardless of being fraught with inherent potential danger if done while exercising reasonable care, or the care which an ordinary prudent person would use under the existing circumstances, would not be negligence even though death resulted therefrom. Therefore, it would not constitute criminal negligence or even a lack of ordinary care. In order to use ordinary care in throwing and exploding a hand grenade, it would be necessary to take far greater precaution in view of the potential danger involved, to see that no one was apt to be hurt thereby, but the culpability required of a person in order to be guilty of ordinary negligence on the one hand, or recklessness on the other, is the same whether the inherent dangers of the situation are great or little. If a hand grenade were so exploded without first taking reasonable precaution to make sure

that no one was within, or apt to come within, the danger zone, the degree of negligence might either be mere ordinary negligence or criminal negligence; that is, a reckless disregard for the safety of others, or it might be so highly dangerous to the lives of others as to "evidence a depraved mind regardless of human life," in accordance with the circumstances of the case. But regardless of the great inherent dangerous potentiality of the act done, it might be so done with sufficient degree of care that the person doing the act would be guilty of no negligence whatever and subject to no liability or punishment, either civil or criminal. Such would be the case if he exercised the degree of care which an ordinary prudent person would use under the existing facts and circumstances. If he failed to use ordinary care, he would be subject to civil liability only and would be guilty of a criminal offense under Sec. 103-1-19, U. C. A. 1943, only where he acted recklessly or in marked disregard for the safety of others. It could make no difference whether the act he was doing was fraught with great danger or not. The standards by which we determine what is ordinary care under the surrounding facts and circumstances, or what is recklessness under those circumstances, is a sliding standard which requires a person to act in accordance with the exigencies of the occasion and does not require the same quantum of care in all cases.

So to require only ordinary negligence under arm (b) (3) and (4) because the act is by the statute required to be inherently dangerous to the lives of others, but to require recklessness or a marked disregard for the safety of others where the act done does not have such inherent dangerous potentialities, is to require greater culpability, wrongdoing and a greater departure from the normal range of prudent human action in one case than in the other. Criminal negligence requires something more than ordinary negligence. We seem to recognize this in the *Lingman* case, but still stated that under arm (b) (3) and (4) which require the doing of an act fraught with danger, it need only

be coupled with ordinary negligence to constitute criminal negligence. This seems to be tantamount to holding that criminal negligence requires something more than ordinary negligence, but at the same time also holding that under certain circumstances only ordinary negligence is criminal negligence.

Even if the above analysis as to what constitutes criminal negligence were incorrect, still it is inconsistent to hold that under arm (a) (2) involving death from the commission of a malum prohibitum unlawful act, a reckless or marked disregard for the safety of others is required, but that under arm (b) category (3), involving the doing of a lawful act in an unlawful manner, and category (4) involving the doing of a lawful act without due caution and circumspection, only ordinary negligence is required. Such a holding is inconsistent because in practically every case where a person is killed by the commission of an unlawful act under arm (a) (2), such act contains the necessary ingredient required under arm (b) that the act be fraught with the potentialities of causing death, although that ingredient is not required by the statute. In some cases under arm (a) (2), these dangerous potentialities may not be present, but usually they are. Arm (a) requires the doing of an unlawful act. Usually the reason for making such act unlawful is because of its inherently potential danger. In the *Lingman* case we recognized that an act under arm (a) (2) might contain the ingredient of potential danger, but we still held that even though such were the case under that arm, the jury must be instructed that in order to convict the defendant of involuntary manslaughter, he must be found guilty of a reckless or marked disregard for the safety of others. But we said that under arm (b) (3) even under exactly the same set of facts and in the same case, the jury might be instructed to find the defendant guilty if they found that he was guilty of only ordinary negligence. Such instructions would obviously be inconsistent. To avoid such apparent inconsistencies in

that kind of case, we advised the trial court to instruct only under arm (a) (2).

If we hold that in the absence of an act which is fraught with killing potentialities, recklessness is required under arm (a) (2), but where the act has such potentialities only ordinary negligence is required, then we would be acting consistently. But if we hold that even though an unlawful act under arm (a) (2) has the necessary dangerous potentialities required under arm (b), still, if the act is prosecuted under arm (a) (2), we must require the jury to find recklessness, then such instruction is inconsistent with an instruction in the same case requiring only ordinary negligence under arm (b) (3). No amount of belaboring the question can make it otherwise. For it is evident that under the same set of facts, we cannot consistently instruct the jury to acquit the defendant if they find that he did not act in a marked disregard for the safety of others and in another instruction instruct that they may find him guilty on only ordinary negligence.

If we hold that only ordinary negligence is required where the act committed is fraught with potentialities of causing death, but that extra-ordinary negligence where such potentialities are lacking is necessary, then to be consistent we should hold that in all cases where the act involves the ingredient of inherent potential danger, it need only be coupled with ordinary negligence in order to constitute criminal negligence. But since in many cases arm (a) (2) does contain the ingredient of being potentially dangerous to life, we cannot consistently require recklessness in all cases which come within arm (a) (2) and only a lack of ordinary care in all cases under arm (b). But such is the effect of the rule we stated in the *Lingman* case.

To require reckless conduct for involuntary manslaughter cases under arm (a) (2) but only a failure to use ordinary care under arm (b) (4) will have the effect of placing a premium on the violation of the law. Since most of the un-

lawful acts which do cause accidental death, are made unlawful because of their apparent inherent potentiality for causing death or injury to person or property, in many cases the only distinguishing feature between these categories is that under arm (b) (4) the act must be lawful, whereas under arm (a) (2) it must be unlawful. So we place a premium on violating the law, by allowing a conviction for involuntary manslaughter where the act is lawful, upon a showing of a lack of only ordinary care, but, many times where the act is of exactly the same nature, because it is unlawful we would hold that the defendant is not guilty of involuntary manslaughter unless he acted with a reckless or marked disregard for the safety of others.

In the instant case, the prevailing opinion holds that only a lack of ordinary care is required in order to convict the defendant. But if defendant's property had been situated within a game preserve where to discharge firearms would be unlawful, then under those circumstances, the act committed would have been unlawful, and the case would have come under arm (a) (2) and he would have been entitled to a more favorable instruction requiring the state to prove reckless conduct in order to convict him of involuntary manslaughter. In the two cases, the nature of the acts done would be exactly the same. The only difference would be that the shooting would be unlawful on the game preserve, but lawful under the facts of the present case. If defendant had been a law breaker, he would be entitled to a more favorable instruction than where his act was within the law.

The same would be true in almost countless situations which might arise. For instance, suppose a person were killed by the explosion of a tank of gasoline which was being transported on the highway. On some streets such transportation would be lawful, but on others it would be unlawful. If the driver violated the law by driving his tanks loaded with gasoline over a forbidden street and was

prosecuted for involuntary manslaughter, he would be rewarded for breaking the law by being not guilty of that offense unless he acted in a reckless or marked disregard for the safety of others; whereas, if he was obeying the law at the time of the explosion, he would be punished for doing so by being guilty of involuntary manslaughter if he failed to use only ordinary care. The same anomalous results would follow if a person was killed as the result of the transporting, handling or storing of high explosives. If the act committed was unlawful, the person committing the act would get more favorable treatment than he would if he were careful to keep within the law.

The same principle is illustrated where a hunter during the open season mistakenly shoots and kills a fellow hunter. There, as in the present case, he would be committing a lawful act and would be guilty of involuntary manslaughter if he failed to use only ordinary care. There too he is using a lethal or deadly weapon, but if his act were unlawful, say for instance, he was hunting out of season and mistakingly shot the owner of the property he was on, or if he was on a game preserve, or if he was unlawfully carrying a gun in a populous city and accidently killed some one while so doing, then because his act would be unlawful in order to convict him of involuntary manslaughter, the state would have to show a reckless disregard for the safety of others. It is unthinkable that such was the legislative intention.

While we stated in the *Lingman* case that only ordinary negligence was necessary to constitute involuntary manslaughter under arm (b) categories (3) and (4), I am unable to find any case where this court has so held. We did not so hold in the *Lingman* case; on the contrary, although we announced the doctrine and stated that the evidence was sufficient to justify the submission to the jury under arm (b) (3), we said that it would be inadvisable to do so because the court must submit the case under arm (a) (2) and since the two instructions would appear to be

in conflict, it would have a tendency to confuse the jury and therefore it would be inadvisable to instruct under both arms. In *State* v. *Barker,* supra, we were again confronted with the same problem and we there held that regardless of which arm the jury was instructed under, they should be required to find a reckless or marked disregard for the safety of others in order to convict the defendant.

In the *Barker* case, the defendant drove into an arterial highway when there was a car approaching so near as to constitute an immediate hazard, thereby killing a passenger in the approaching car. It is hard to conceive of any act more fraught with the apparent potentialities of causing death than that. Yet we held that the jury must find a marked disregard for the safety of others in order to convict the defendant, although we point out that that case would come under both arm (a) (2), as well as arm (b) (3).

This distinction is not required by Section 103-28-5, U. C. A. 1943, the involuntary manslaughter statute. That statute provides as follows:

"Manslaughter is the unlawful killing of a human being without malice. It is of two kinds: (1) Voluntary, upon a sudden quarrel or in the heat of passion. (2) Involuntary, in the commission of an unlawful act not amounting to a felony, or in the commission of a lawful act which might produce death, in an unlawful manner or without due caution and circumspection."

The express terms of that statute do not make any distinction between malum in se and malum prohibitum unlawful acts under arm (a) categories (1) and (2), nor do they require any negligence under either category in that arm. And there is nothing in the wording of the statute which suggests the requirement of the negligence where death results from the doing of a lawful act in an unlawful manner which is arm (b) (3) under the *Lingman* case classifications. It is only in category (4), where death results from the commission of a lawful act without due caution and circumspection, that negligence is suggested as

a necessary requirement of involuntary manslaughter by the statute. Negligence is placed in arm (a) (2) and arm (b) (3) by judicial construction. I agree that negligence should be required under those categories in view of the new developments in the modern automobile and machine age and the many statutory regulations which have been promulgated to meet the new problems. But I see nothing about the situation which requires a greater degree of negligence under arm (a) (2) than is required under arm (b) (3) and (4), and as previously pointed out, such distinction results in confusion, fine distinctions, discriminations in favor of the law violator, and is impossible to consistent application.

I recognize a reasonable basis for requiring that death caused by a lawful act whether done in an unlawful manner or without due caution or circumspection in order to constitute involuntary manslaughter, must have the additional ingredient that such act might produce death; whereas, if the act itself is unlawful, then this ingredient would not be necessary. But such requirement is an entirely different thing from holding that the jury should be instructed in the first case that only ordinary care is required, but that in the second, recklessness is necessary to constitute involuntary manslaughter.

I fully agree with the prevailing opinion that the evidence was sufficient to sustain a conviction of the defendant whether only ordinary negligence is required, or a reckless or marked disregard for the safety of others, is necessary. In view of the fact that defendant used a lethal or deadly weapon and fired it into a place where he had reason to believe that there were human beings who might be thereby injured or even killed, the requirements of the statute are fully met, regardless of which standard of negligence is required. But I think that defendant was entitled to an instruction that he should not be found guilty· unless the jury found that he acted with a reckless or marked disregard for the safety of others.