**STATE of Utah, Plaintiff and Respondent,**

v.

**Kelly K. HALLETT and Richard James Felsch, Defendants and Appellants.**

**No. 15765.**

Supreme Court of Utah.

Oct. 20, 1980.

---

**13.** U.C.A., 1953, 41–12–21.1.

Gary A. Frank, W. Jerry Ungricht, Murray, for defendants and appellants.

Robert B. Hansen, Atty. Gen., Ted L. Cannon, Salt Lake County Atty., James W. Housley, Deputy Salt Lake County Atty., Salt Lake City, for plaintiff and respondent.

CROCKETT, Chief Justice:

Defendant Kelly K. Hallett appeals his conviction of negligent homicide,[1] in that he caused the death of Betty Jean Carley.

---

1.  U.C.A.1953, Sec. 76–5–206.

On the evening of September 24, 1977, a number of young people gathered at the defendant's home in Kearns. During the evening, some of them engaged in drinking alcoholic beverages. At about 10:30 p. m., they left the home, apparently bent on revelry and mischief. When they got to the intersection of 5215 South and 4620 West, defendant and the codefendant Richard Felsch (not a party to this appeal) bent over a stop sign, which faced northbound traffic on 4620 West, until it was in a position parallel to the ground. The group then proceeded north from the intersection, uprooted another stop sign and placed it in the backyard of a Mr. Arlund Pope, one of the state's witnesses. Traveling further on, defendant and his friends bent a bus stop sign over in a similar manner.

The following morning, Sunday, September 25, 1977, at approximately 9:00 a. m., one Krista Limacher was driving east on 5215 South with her husband and children, en route to church. As she reached the intersection of 4620 West, the deceased, Betty Jean Carley, drove to the intersection from the south. The stop sign was not visible, since the defendant had bent it over, and Ms. Carley continued into the intersection. The result was that Mrs. Limacher's vehicle struck the deceased's car broadside causing her massive injuries which resulted in her death in the hospital a few hours later.

Defendant was charged with manslaughter on the ground that his unlawful act was the cause of the death of Ms. Carley.[2] Upon a trial to the court, he was found guilty of the lesser offense of negligent homicide, a class A misdemeanor.

■ Defendant attacks his conviction on the ground that two of the state's witnesses, Paul Kleemeyer and Kim Erickson, were his accomplices and their testimony was not sufficiently corroborated by other evidence as required by U.C.A.1953, Sec. 77–31–18. That statute, which was in effect at the time of defendant's trial,[3] is:

> Conviction on testimony of accomplice.–A conviction shall not be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself and without the aid of the testimony of the accomplice tends to connect the defendant with the commission of the offense; and the corroboration shall not be sufficient, if it merely shows the commission of the offense or the circumstances thereof.

It has been interpreted to mean that a defendant may not be convicted on the uncorroborated testimony of an accomplice even though the finder of fact believes the accomplice and believes the defendant to be guilty beyond a reasonable doubt.[4] The general rationale for such a statute is that the testimony of a witness who has been involved in an offense may be untrustworthy because of an attempt to protect himself by placing the blame on another.[5]

■ In this case, that protective statute would only justify reversal of a conviction if Kleemeyer and Erickson were indeed regarded as accomplices and there was no other evidence which independently tended to connect the defendant to the offense charged. In determining whether one is an accomplice, the test is whether he could be charged with the same offense.[6] Without reciting the facts in undue detail, though there is evidence that Kleemeyer and Erickson were engaged in the same general mis-

**2.** U.C.A.1953, Sec. 76–5–205.

**3.** In 1979, after the events which gave rise to this prosecution, Sec. 77–31–18 was repealed and reenacted in the following form:
> Conviction on uncorroborated testimony of accomplice–Cautionary instruction.–(1) A conviction may be had on the uncorroborated testimony of an accomplice.
> (2) In the discretion of the court, an instruction to the jury may be given to the effect that such uncorroborated testimony

should be viewed with caution, and such an instruction should be given if the trial judge finds the testimony of the accomplice to be self contradictory, uncertain, or improbable.

**4.** *State v. Lay,* 38 Utah 143, 110 P. 986 (1910).

**5.** VII J. Wigmore, Evidence, sec. 2057 (Chadbourn Rev. 1978).

**6.** *State v. Foust,* Utah, 588 P.2d 170 (1978).

chief, there is no evidence that either of them participated in the bending down of the stop sign in question; and there is evidence from other witnesses which connects the defendant with this crime. Accordingly, his contention is without merit.

■ Defendant next argues that the pulling down of a stop sign does not show the requisite intent to constitute negligent homicide. It is recognized that one should not be so convicted unless he acts with some degree of culpable intent.[7] Our statute provides that a person is guilty of negligent homicide if he causes the death of another:

> (4) With criminal negligence or is criminally negligent with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise in all the circumstances as viewed from the actor's standpoint.[8]

As to the issue of the defendant's intent: The inquiry is whether from the evidence and the reasonable inferences to be drawn therefrom, the trial court could believe beyond a reasonable doubt that the defendant's conduct met the elements of that statute. In his analysis of the evidence, the trial court was justified in viewing the situation thus: The defendant could not fail to know that stop signs are placed at particular intersections where they are deemed to be necessary because of special hazards; and that without the stop sign, the hazards which caused it to be placed there would exist; and that he should have foreseen that its removal would result in setting a trap fraught with danger and possible fatal consequences to others.

■ From what has been delineated above, the trial judge expressly found that the defendant should have foreseen that his removal of the stop sign created a substantial risk of injury or death to others; and that his doing so constituted a gross deviation from the standard of care that an ordinary person would exercise in all the circumstances.

Defendant makes a separate argument that the evidence does not support the conclusion that his acts were the proximate cause of Ms. Carley's death. He starts with a uniformly recognized definition: that proximate cause is the cause which through its natural and foreseeable consequence, unbroken by any sufficient intervening cause, produces the injury which would not have occurred but for that cause.[9] His urgence here is that there was evidence that as the deceased approached from the south, she was exceeding the speed limit of 25 mph; and that this was the subsequent intervening and proximate cause of her own death. This is based upon the fact that a motorist, who was also coming from the south, testified that he was going 25 mph and that Ms. Carley passed him some distance to the south as she approached the intersection.

■ In regard to that contention, there are three observations to be made: The first is that the evidence just referred to would not necessarily compel the trial court to believe that the deceased was exceeding 25 mph as she got close to and entered the intersection, nor did the trial court make any such finding. Second, even if it be assumed that she was so exceeding the speed limit, the reasonable and proper assumption is that if the stop sign had been there, she would have heeded it and there would have been no collision.

---

7. U.C.A.1953, Sec. 76–2–101 provides:

Requirements of criminal conduct and criminal responsibility.–No person is guilty of an offense unless his conduct is prohibited by law and:

(1) He acts intentionally, knowingly, recklessly or with criminal negligence with respect to each element of the offense as the definition of the offense requires; or

(2) His acts constitute an offense involving strict liability.

8. See U.C.A.1953, Sec. 76–2–103.

9. See *Rees v. Albertson's*, Utah, 587 P.2d 130 (1978).

■ The foregoing provides sufficient justification for the trial court's rejection of the defendant's contentions. But there is yet a third proposition to be considered. It is also held that where a party by his wrongful conduct creates a condition of peril, his action can properly be found to be the proximate cause of a resulting injury, even though later events which combined to cause the injury may also be classified as negligent, so long as the later act is something which can reasonably be expected to follow in the natural sequence of events.[10] Moreover, when reasonable minds might differ as to whether it was the creation of the dangerous condition (defendant's conduct) which was the proximate cause, or whether it was some subsequent act (such as Ms. Carley's driving), the question is for the trier of the fact to determine.[11]

Reflecting upon what has been said above, we are not persuaded to disagree with the view taken by the trial court: that whether the defendant's act of removing the stop sign was done in merely callous and thoughtless disregard of the safety of others, or with malicious intent, the result, which he should have foreseen, was the same: that it created a situation of peril; and that nothing that transpired thereafter should afford him relief from responsibility for the tragic consequences that did occur.

Affirmed. No costs awarded.

MAUGHAN, WILKINS and STEWART, JJ., concur.

HALL, Justice (dissenting).

I respectfully dissent.

The offense of negligent homicide is consummated where "the actor, acting with criminal negligence, causes the death of another."[1] The language of the statute punctuates the necessity of a substantial causal relationship between the act of defendant and the death of the victim, which relationship constitutes a necessary element of the offense.[2] To this end, criminal law adopts the notion of proximate cause—the defendant's conduct must proximately result in the victim's injury.[3] As in other areas of the law,[4] a defendant's criminal liability is cut off where the injury in question arose from the operation of an unforeseeable, independent intervening force.[5] Under such circumstances, the defendant's conduct becomes a remote cause, which gives rise to no legal responsibility. This holds true even where the defendant, by negligent action, creates a condition which is subsequently acted upon by another unforeseeable, independent and distinct agency to produce the injury, even though the injury would not have occurred except for defendant's act.[6] It is, moreover, noteworthy that proximate causation, like any other element of a crime, must be proven beyond a reasonable doubt.[7] Where, on appeal, it appears from the evidence (viewed in a light most favorable to the state) that reasonable minds must have entertained a reasonable doubt regarding the causal relationship in question, reversal and dismissal are in order.[8]

The evidence produced at trial does not discount beyond a reasonable doubt the possibility that the actions of the decedent on the morning of September 25, 1977, consti-

---

10. See *Nyman v. Cedar City*, 12 Utah 2d 45, 361 P.2d 1114 (1961); *Jones v. City of South San Francisco*, 96 Cal.App.2d 427, 216 P.2d 25 (1950).

11. Id.

1. U.C.A., 1953, 76–5–206.

2. *State v. Wilson*, 117 Utah 368, 216 P.2d 630 (1950).

3. 22 C.J.S. Criminal Law § 37.

4. See e.g., *Anderson v. Parson Red–E–Mix Paving Co.*, 24 Utah 2d 128, 467 P.2d 45 (1970);

*Ehalt v. McCarthy*, 104 Utah 110, 138 P.2d 639 (1943).

5. 1 Wharton's Criminal Law § 200, p. 448.

6. 57 Am.Jur.2d, Negligence, § 196.

7. U.C.A., 1953, 76–1–501(1).

8. *State v. Daniels*, Utah, 584 P.2d 880 (1978); *State v. Middelstadt*, Utah, 579 P.2d 908 (1978); *State v. Fort*, Utah, 572 P.2d 1387 (1977); *State v. Logan*, Utah, 563 P.2d 811 (1977).

tuted an independent, unforeseeable intervening cause. In this regard, it is to be noted that the evidence produced at trial clearly established that the accident occurred in broad daylight and that the stop sign in question had not been removed from the intersection, but merely bent over into a position where it was still marginally visible. Moreover, the word "Stop" was clearly printed in large block letters on the pavement leading into the intersection.[9] Even if we were to assume, however, that defendant's action in bending the stop sign over erased all indication that vehicles proceeding north on 4620 West were obliged to yield right-of-way, such would render the location of the accident an unmarked intersection. The law requires due care in approaching such intersections, with such reasonable precautions as may be necessary under the circumstances.[10]

Evidence also appearing in the record indicates that decedent was moving at an imprudent speed when she entered the intersection. Although the exact rate of speed is disputed, it is unchallenged that she had, less than a block behind, passed a truck which, itself, was doing the legal speed limit. All parties testified that she made no attempt to slow or brake upon entering the intersection. Under such circumstances, reasonable minds must entertain a reasonable doubt that the defendant's conduct was the sole efficient legal cause of her death.[11]

I would reverse the trial court and dismiss the charge of negligent homicide.

---

9. A fact not acknowledged in the main opinion.

10. U.C.A., 1953, 41–6–72; *Smith v. Lenzi*, 74 Utah 362, 279 P. 893 (1929).

11. The state argues that, in order to be found to be a superseding intervening cause, the decedent's conduct must, itself, be found to have been negligent. Such an argument misconstrues the nature of causation. Contributory negligence, alone, is not a defense to criminal liability. Only when some agency other than the defendant's conduct, be it the victim's actions (negligent or otherwise), or an extrinsic force, is so completely and solely responsible for the resultant injury that defendant's acts become only a remote cause, is criminal liability cut off.