2005 UT App 520

**STATE of Utah, Plaintiff and Appellee,**

v.

**Dorothy Nanette BOSS, Defendant and Appellant.**

No. 20040714–CA.

Court of Appeals of Utah.

Dec. 8, 2005.

Shelden R. Carter, Harris & Carter, Provo, for Appellant.

Tim Taylor, Utah County Attorney Office, Provo, for Appellee.

Before BILLINGS, P.J., DAVIS, and McHUGH, JJ.

OPINION

BILLINGS, Presiding Judge:

¶ 1 Defendant Dorothy Nanette Boss appeals from a jury conviction of negligent homicide, a class A misdemeanor, under Utah Code section 76–5–206. *See* Utah Code Ann. § 76–5–206 (2003). On appeal, Defendant argues there was insufficient evidence to support a conviction of negligent homicide, because Defendant's conduct (1) did not rise to the level of criminal negligence and (2) was not the proximate cause of the collision. We affirm Defendant's conviction.

BACKGROUND

¶ 2 On September 17, 2003, Defendant was driving westbound on Highway 73, a two-lane highway, near Saratoga Springs, Utah. Wendell Roy Hathaway (Hathaway) was driving eastbound on Highway 73 with his family when he saw Defendant pull out of the westbound lane of traffic into the eastbound lane in an attempt to pass two or more cars. Noting Defendant's approach in the eastbound lane, Hathaway slowed down and be-

gan to pull off onto the south side of the road. Hathaway then saw Defendant's car cut sharply back into the westbound lane directly behind a westbound dump truck and, within seconds, return into the eastbound lane, sliding sideways on the driver's side of the car. Defendant's car hit the Hathaway car, which at the time of impact was at the far side of the eastbound lane. Jaycee Hathaway, Hathaway's four-year-old daughter, was sitting in a car seat on the back driver's side when the impact occurred. She suffered severe head trauma and died later that day from her injuries. Besides Hathaway and his family, there were no other witnesses to the accident.

¶ 3 Deputy Ray Edwards (Officer Edwards) investigated the scene of the accident. Initially, no one informed Officer Edwards that Defendant's vehicle emerged from the westbound lane on its side before hitting Hathaway's car. As a result, Officer Edwards did not collect any physical evidence indicating what caused Defendant's car to enter the eastbound lane on its side. At trial, Officer Edwards testified that aggressive steering combined with speed could lift a car sideways onto two wheels. Officer Edwards also stated that a particular driveway, located on the west shoulder of Highway 73, could have acted as a ramp, lifting Defendant's car onto two wheels if Defendant had hit it.

¶ 4 Deputy Susan Morgan (Officer Morgan), the officer who first responded to the accident, testified that Defendant said she was traveling at seventy miles per hour at the time of the accident. The speed limit in the area was sixty-five miles per hour.

¶ 5 Gregory Du Val (Du Val), an expert witness hired by the State to reconstruct the accident, testified that in order for Defendant's car to roll onto the driver's side and slide into the eastbound lane, it must have left the paved roadway and hit a ramp or some other lifting mechanism. Du Val stated that this mechanism was likely the driveway identified by Officer Edwards. Du Val further testified that to reach the driveway, Defendant would have had to steer aggressively with a force beyond what would normally have been needed to return her car to

the westbound lane of traffic. Du Val opined that the use of such force was negligent.

¶ 6 Dennis Andrews (Andrews), another expert witness in accident reconstruction for the State, testified that he was unable to identify what caused Defendant's car to roll on its side and that no preimpact speeds could be calculated. Andrews also testified that, although he could not speculate as to whether Defendant's specific actions, causing her car to move back into the eastbound lane, were negligent, her overall actions were negligent.

¶ 7 At the conclusion of the trial, the trial judge instructed the jury that

> a vehicle may not be operated on the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless the left side is clearly visible and is free of oncoming traffic for a sufficient distance to permit overtaking and passing to be completed without interfering with the operation of any vehicle approaching from the opposite direction of any vehicle overtaken.

¶ 8 The jury found Defendant guilty of negligent homicide. Defendant appeals.

## ISSUES AND STANDARD OF REVIEW

 ¶ 9 At issue on appeal is whether there was sufficient evidence to support Defendant's conviction of negligent homicide with regard to the elements of (1) criminal negligence and (2) causation. In reviewing sufficiency of the evidence claims, we reverse a jury verdict only when the evidence "is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt." *State v. Mead*, 2001 UT 58, ¶ 65, 27 P.3d 1115 (quotations and citations omitted). We examine the evidence in a light most favorable to the verdict. *See State v. Hamilton*, 2003 UT 22, ¶ 18, 70 P.3d 111. "So long as there is some evidence, including reasonable inferences, from which findings of all the requisite elements of the crime can reasonably be made, our inquiry stops." *Mead*, 2001 UT 58 at ¶ 67, 27 P.3d 1115 (quotations and citation omitted).

## ANALYSIS

¶ 10 Defendant argues there was insufficient evidence to support her conviction of negligent homicide, under Utah Code section 76–5–206(1), where Defendant's conduct (1) did not rise to the level of criminal negligence and (2) was not the proximate cause of the collision. *See* Utah Code Ann. § 76–5–206(1). Under section 76–5–206(1), "[c]riminal homicide constitutes negligent homicide if the actor, acting with criminal negligence, causes the death of another." *Id.*

### I. Criminal Negligence

 ¶ 11 First, Defendant argues that her actions did not amount to criminal negligence. Under Utah law, a person acts with criminal negligence when "[s]he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur." Utah Code Ann. § 76–2–103(4) (2003). The substantial and unjustifiable risk of which a person ought to be aware in a case of negligent homicide is death. *See State v. Standiford*, 769 P.2d 254, 267 (Utah 1988). According to the Utah Code, "[t]he risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise in all the circumstances as viewed from the actor's standpoint." Utah Code Ann. § 76–2–103(4).

 ¶ 12 Notably, "[o]rdinary negligence ... is not sufficient to constitute criminal negligence." *State v. Larsen*, 2000 UT App 106, ¶ 18, 999 P.2d 1252 (quotations and citation omitted). " '[M]ere inattention or mistake in judgment resulting even in death of another is not criminal unless the quality of the act makes it so.' " *Id.* (quoting *State v. Warden*, 784 P.2d 1204, 1207 (Utah Ct.App. 1989)).

¶ 13 Defendant contends the case of *State v. Larsen* is factually similar to our case here. *See* 2000 UT App 106, 999 P.2d 1252. In that case, the defendant made a left turn at normal speed at an intersection and collided with an oncoming car, which would have been visible to the defendant had he been looking. *See id.* at ¶ 19. In *Larsen*, the oncoming car clearly had the right of way,

and the defendant had a small amount of alcohol in his system. *See id.* One of the passengers in the oncoming car was killed as a result of the collision, and the defendant was convicted of negligent homicide. *See id.* at ¶¶ 7–8. The defendant challenged the sufficiency of the evidence on appeal. *See id.* at ¶ 15. On appeal, we held that while the defendant's conduct was negligent, it was not a gross deviation from the standard of care. *See id.* at ¶ 24.

■ ¶ 14 Defendant, citing language from *Larsen*, argues that her conduct was not criminally negligent because it did not amount to recklessness or an indifference incompatible with a proper regard for human life.[1] However, we agree with the State that the "reckless" and "indifferent" language we employed in *Larsen* is unfortunate and should not be read to substitute recklessness for the relevant standard set forth in section 76–2–103(4).[2]

¶ 15 Defendant maintains that like the defendant's conduct in *Larsen*, her actions were not criminally negligent, but rather represented a serious mistake in judgment. However, unlike the evidence in *Larsen*, here there was testimony revealing Defendant's excessive speed and aggressive steering when she attempted to return her car to the right side of the road after passing. We simply cannot conclude that no reasonable juror could find that Defendant's attempt to pass two or more cars on a two-lane highway, in the face of oncoming traffic, at a speed of seventy miles per hour—followed by a sharp, overcorrecting lane transition causing loss of vehicle control—created a substantial and unjustifiable risk of death.

¶ 16 Although there are no Utah negligent homicide cases factually on point with the present case, the analytical framework of Utah negligent homicide cases supports our decision to affirm the jury's verdict in the instant case. In *State v. Warden*, 813 P.2d 1146 (Utah 1991), the Utah Supreme Court reversed a decision by the court of appeals and upheld a doctor's jury conviction for negligent homicide of a newborn where the doctor failed to monitor the condition of the premature newborn, despite knowing the baby suffered from a respiratory condition; inform the newborn's parents of the gravity of the baby's condition; and hospitalize the baby. *See id.* at 1151–52. The court stated, "[T]here was evidence of *repeated* deviations from the standard of care, a *wide* divergence between the appropriate level of care and the care actually received, [and] a *significant* chance of death . . . ." *Id.* at 1152 (emphasis added).

¶ 17 Here, like the doctor's separate actions in *Warden*, Defendant's speeding, passing a line of vehicles in the face of oncoming traffic, and making a sharp, overcorrecting lane transition, may be seen as repeated deviations from the appropriate standard of care, each of which might result in a substan-

---

1. In *State v. Larsen*, 2000 UT App 106, 999 P.2d 1252, we stated:
 The facts presented at trial do not indicate that defendant's actions were undertaken recklessly or with an indifference to human life, nor does the quality of defendant's act lead to the conclusion that his actions were criminal. Rather, defendant simply failed to see an oncoming car which was visible to other drivers as he made a left turn, with tragic consequences.
 *Id.* at ¶ 21.

2. *Compare* Utah Code Ann. § 76–2–103(3) (2003) (stating persons act recklessly when they are "*aware of but consciously disregard[ ]* a substantial and unjustifiable risk" (emphasis added)), *with id.* § 76–2–103(4) (stating that persons act with criminal negligence when they "*ought to be aware* of a substantial and unjustifiable risk that the circumstances exist or the result will occur" (emphasis added)). Criminal negligence, like recklessness, and unlike ordinary negligence, requires a *gross deviation* from the applicable stan-

dard of care. *See State v. Standiford*, 769 P.2d 254, 267 (Utah 1988) (comparing and contrasting reckless manslaughter with negligent homicide). The risk of death required for recklessness and for criminally negligent conduct is the same; the only difference between the two is whether the defendant was aware of that risk. *See id.; see also State v. Ontiveros*, 835 P.2d 201, 206 (Utah Ct.App.1992) (describing the distinction between reckless manslaughter and negligent homicide as whether person perceives risk of death, not degree of perception of risk). Therefore, despite the *Larsen* court's reference to recklessness, our decision in that case was correct, because it hinged upon the court's determination that the evidence was insufficient to show beyond a reasonable doubt that defendant's conduct constituted a gross deviation from the standard of care. *See Larsen*, 2000 UT App 106 at ¶ 27, 999 P.2d 1252.

tial and unjustifiable chance of death under the circumstances.

¶ 18 Also, in *State v. Hallett*, 619 P.2d 335 (Utah 1980), the defendant was convicted of negligent homicide when he took a stop sign down, which later caused a car to collide with another car at an intersection. *See id.* at 337. The defendant appealed based, in part, upon a sufficiency of the evidence claim. *See id.* at 338. The Utah Supreme Court upheld the lower court's conviction where the evidence established the defendant ·

> could not fail to know that stop signs are placed at particular intersections where they are deemed to be necessary because of special hazards; and that without the stop sign, the hazards which caused it to be placed there would exist; and that he should have foreseen that its removal would result in setting a trap fraught with danger and possible fatal consequences to others.

*Id.*

¶ 19 In this case, Defendant's violation of · traffic rules was tantamount to the actions of the defendant in the *Hallett* case, both in terms of the risks created and that the hazards of violating multiple traffic rules ought to have been known. Defendant's conduct is ultimately indicative of criminal negligence as opposed to mere inattention or a mistake in judgment.

¶ 20 Additionally, there is persuasive authority from other jurisdictions, with statutory standards similar to ours, that support the proposition that improper attempts to pass, combined with speed, can meet the substantial and unjustifiable risk or gross deviation standard. In *State v. Wall*, 481 N.W.2d 259 (S.D.1992), the defendant was convicted of involuntary or reckless manslaughter when, while driving at a high speed, ducking in and out of lanes, and attempting to pass multiple cars in one lengthy pass, she ran into a pickup. *See id.* at 261–62. The defendant appealed based on insufficiency of the evidence, and the South Dakota Supreme Court upheld the lower court's decision. *See id.* at 263. Similarly, in *State v. Wilcoxon*, 639 So.2d 385 (La.Ct.App.1994), the defendant was convicted of negligent homicide when, driving over seventy miles per hour, defen-

dant attempted a pass uphill and around a curve marked as a no-passing zone and, despite applying his brakes, collided with an oncoming car. *See id.* at 387. The defendant appealed based on insufficiency of the evidence, but the court of appeals upheld the lower court's conviction. *See id.* at 389.

¶ 21 In summary, Defendant has failed to persuade this court that the evidence in the instant case was so inconclusive that reasonable minds must have entertained a reasonable doubt that Defendant was guilty of negligent homicide.

## II. Causation

¶ 22 Second, Defendant argues that the State did not establish that her conduct caused the death of the child. Specifically, Defendant challenges the sufficiency of the evidence regarding the particular mechanism that caused Defendant's car to lift, roll onto its side, cross the lane, and collide with the Hathaway car. Criminal negligence "requires a causal connection between defendant's actions and the ultimate result." *State v. Larsen*, 2000 UT App 106, ¶ 20, 999 P.2d 1252.

¶ 23 In *State v. Hallett*, 619 P.2d 335 (Utah 1980), the Utah Supreme Court found the defendant's removal of a stop sign to be a gross deviation from the standard of care, which created a substantial and unjustifiable risk. The defendant in *Hallett* claimed that he was not the proximate cause of the resulting death because there was evidence that one of the vehicles, which subsequently collided at the intersection, was speeding. *See id.* at 338. In response to the defendant's contention, the Utah Supreme Court stated that

> where a party by his wrongful conduct creates a condition of peril, his action can properly be found to be the proximate cause of a resulting injury, even though later events [that] combined to cause the injury may also be classified as negligent, so long as the latter act is something which can reasonably be expected to follow in the natural sequence of events.

*Id.* at 339.

¶ 24 In this case, there was testimony at trial that a specific driveway, adjacent to the

road where the accident occurred, was the mechanism that, combined with Defendant's conduct, likely caused the fatal collision. Both Officer Edwards and expert witness Du Val, an accident reconstructionist, identified the driveway on the shoulder of the road as the probable lifting mechanism that contributed to Defendant's car reentering the eastbound lane on its side.

¶ 25 However, the jury could reasonably conclude it was Defendant's conduct that caused her to lose control of her vehicle, and ultimately crash into the oncoming vehicle. Defendant attempted to pass two or more cars on a two-lane highway, in the face of oncoming traffic, at a speed of seventy miles per hour, subsequently making a sharp, over-correcting lane transition, which likely caused her car to hit the driveway. Like the defendant's conduct in *Hallett*, Defendant's conduct created a condition of peril, which led to a substantial risk of death, and therefore, a jury could have properly found Defendant's conduct to be the proximate cause of the resulting collision. Thus, we cannot say the evidence that Defendant's conduct caused the collision was so "inconclusive or inherently improbable" that reasonable minds must have entertained a reasonable doubt. *State v. Mead,* 2001 UT 58,¶ 65, 27 P.3d 1115 (quotations and citations omitted).

## CONCLUSION

¶ 26 We conclude that the evidence presented to the jury was sufficient to support Defendant's conviction of negligent homicide. We therefore affirm Defendant's conviction.

¶ 27 WE CONCUR: JAMES Z. DAVIS and CAROLYN B. McHUGH, Judges.