2000 Utah Ct. App. 106

**STATE of Utah, Plaintiff and Appellee,**

v.

**Brett E. LARSEN, Defendant and Appellant.**

**No. 990265–CA.**

Court of Appeals of Utah.

April 13, 2000.

Manny C. Garcia, Salt Lake City, for Appellant.

Sirena M. Wissler and Brendan P. McCullough, Salt Lake County Deputy Attorney, Salt Lake City, for Appellee.

Before GREENWOOD, P.J, JACKSON, Associate P.J., and DAVIS, J.

## OPINION

GREENWOOD, Presiding Judge:

¶ 1 Defendant appeals from convictions of negligent homicide, a class A misdemeanor in violation of Utah Code Ann. § 76–5–206 (1999), and failure to yield, a class C misdemeanor in violation of Utah Code Ann. § 41–6–73 (1998).[1] On appeal, defendant claims, among other things, that the evidence was insufficient to support his convictions. We affirm in part and reverse in part.

## BACKGROUND

¶ 2 "In reviewing the trial court's ruling, we recite the facts in the light most favorable to the trial court's findings." *State v. Anderson*, 910 P.2d 1229, 1230 (Utah 1996).

1. Defendant was also convicted of possession of alcohol by a minor, a class B misdemeanor in violation of Utah Code Ann. § 32A–12–209 (1999), and possession of an open container in a vehicle, a class C misdemeanor in violation of Utah Code Ann. § 41–6–44.20 (1998); however, defendant does not appeal from these convictions.

On June 28, 1998, at approximately 9:00 p.m., defendant was driving a green Ford Ranger, traveling northbound on Wasatch Boulevard in Salt Lake City. As defendant approached the intersection of Wasatch Boulevard and 3800 South, he pulled into the left-hand turn lane, preparing to make a westbound turn onto 3800 South. Defendant stopped for a red light at the intersection. J. Henry Larsen,[2] also preparing to make a left turn from Wasatch Boulevard onto 3800 South, stopped behind defendant. After the light turned green, defendant waited a few moments and began to turn through the intersection.

¶ 3 At the same time, Douglas King was driving a blue Subaru Legacy, traveling southbound on Wasatch Boulevard. There were three passengers in King's car, including Kara Shinners–Little, who was sitting in the front passenger seat. As King approached the intersection at Wasatch Boulevard and 3800 South, his car traveled over a small hill in the road, approximately 200 yards north of the intersection. Near the top of the hill, Wasatch Boulevard splits into two lanes. As the road split, King moved into the right lane to pass a slower moving car. King did not look at the speedometer but believed he was traveling between forty and forty-five miles per hour. King became aware of defendant's truck moving across the intersection a split second before the two vehicles collided. King testified at trial that he may have been mildly distracted by a conversation occurring in his car, but that he never looked away from the road. King also testified that Shinners–Little was wearing at least the shoulder harness of her seat-belt.

¶ 4 J. Henry Larsen, who was stopped in the left-hand turn lane, moved slightly into the intersection behind defendant after the light turned green. From his vantage point, Larsen saw King's car approximately fifty to seventy-five yards away, approaching the intersection as defendant began to make the turn. Larsen testified that defendant was making the left turn at a normal rate of speed, between ten and fifteen miles per hour. He also testified that the Subaru was traveling at a "normal" rate of speed for Wasatch Boulevard, estimating its speed at forty-five to fifty-five miles per hour. As Larsen saw the two cars moving closer together, he honked his horn as a warning to defendant. Larsen then watched the Subaru hit the Ford Ranger on its passenger side, pushing the truck backwards and sideways. Larsen told his passenger to call 911 and went to see if he could help the occupants of the vehicles.

¶ 5 Everyone involved in the collision was injured. Although all four of the occupants of the Subaru were injured, only Shinners–Little was rendered unconscious. During trial, the parties stipulated that Shinners–Little died on June 28, 1998, as a result of the collision.

¶ 6 At the time of the accident, the weather was dry and it was dusk but still light outside. Larsen could not tell if defendant's truck had its lights on. King did not think that defendant's truck had its lights on and indicated that if the turn signal was on it was between blinks when he saw the truck. King also could not remember if he had his lights on. Neither driver slowed down or swerved to avoid the accident. The truck's tires made yaw marks on the road, indicating that the tires were turning as the collision occurred.

¶ 7 Defendant was nineteen years old at the time of the accident. As the officers who arrived at the scene were clearing the intersection, Deputy Clinton Johnson found a previously opened bottle of Canadian Host Whiskey in defendant's truck. After finding the alcohol, Deputy Johnson had defendant's blood drawn to test for the presence of alcohol. Tests of defendant's blood revealed that his blood alcohol level was .009 percent, less than .01 percent. Bruce Beck, a toxicologist from the State Health Laboratory, testified that normally he would consider a reading of .009 percent a negative test. The legal limit for blood alcohol for persons operating motor vehicles in Utah is .08 percent. *See* Utah Code Ann. § 41–6–44(2)(a)(i) (1998). However, the legal limit for persons under the age

---

2. Though J. Henry Larsen and defendant have the same surname, they are not related and had never met prior to the collision.

of twenty-one is zero percent. *See* Utah Code Ann. § 32A–12–209 (1999).[3]

¶ 8 Police officers issued defendant a citation for an improper left turn and violation of the "not a drop" law. Defendant was later charged by Information with negligent collision. On January 5, 1999, the State filed an Amended Information charging defendant with negligent homicide, possession or consumption of alcohol by a minor, open container, and failure to yield the right-of-way. A bench trial on these charges was held February 5, 1999. At the conclusion of the trial, the trial court found defendant guilty of each charge. Defendant now appeals from his convictions of negligent homicide and failure to yield the right-of-way.

## ISSUES AND STANDARD OF REVIEW

■ ¶ 9 Defendant raises and we address two issues on appeal:[4] whether there was sufficient evidence to support defendant's negligent homicide conviction and failure to yield conviction.

■ ¶ 10 " 'When reviewing a bench trial for sufficiency of evidence, we must sustain the trial court's judgment unless it is against the clear weight of the evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake has been made.' " *Spanish Fork City v. Bryan,* 1999 UT App 61, ¶ 5, 975 P.2d 501 (citations omitted). "However, 'before we can uphold a conviction it must be supported by a quantum of evidence concerning each element of the crime as charged from which the [factfinder] may base its conclusion of guilt beyond a

reasonable doubt.' " *Id.* (citation omitted). We review the trial court's legal conclusions for correctness. *See State v. Pena,* 869 P.2d 932, 936 (Utah 1994).

## ANALYSIS

### Marshaling the Evidence

■ ¶ 11 The State urges this court to decline to review defendant's insufficient evidence claims because he failed to marshal the evidence. The burden on a defendant challenging the sufficiency of the evidence is heavy. Defendant "must marshal all of the evidence in support of the trial court's findings of fact and then demonstrate that the evidence, including all reasonable inferences drawn therefrom, is insufficient to support the findings against an attack." *State v. Moosman,* 794 P.2d 474, 475–76 (Utah 1990).

¶ 12 The State argues that defendant failed to marshal all the evidence supporting the trial court's findings, instead interjecting defendant's version of the facts and including facts which are not part of the record. The State points out that defendant did not testify at trial and argues that any statement in defendant's brief regarding what defendant saw at the time of the accident is not part of the record and should not be considered by this court. The State further asserts that defendant only presented and argued those portions of the evidence which support his position, and as such failed to marshal the evidence.

¶ 13 Defendant counters that he fully complied with his duty to marshal the evidence supporting the trial court's findings and as-

---

**3.** This "not a drop" alcohol prohibition does not constitute a DUI violation.

**4.** In his brief, defendant relies on the plain error and ineffective assistance of counsel doctrines to the extent that his sufficiency of the evidence claims were not properly preserved. In his reply brief, defendant abandons these claims because the State does not assert he failed to preserve these issues for appeal. Defendant does not need to rely on such doctrines to preserve sufficiency of the evidence claims for appeal.

When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not

the party raising the question has made in the district court an objection to such findings or has made either a motion to amend them, a motion for judgment, or a motion for a new trial.

Utah R. Civ. P. 52(b); *See* Utah R. Civ. P. 81(e) (stating rules of civil procedure govern in criminal proceedings where no other statute or rule applies). Further, in reviewing a sufficiency of the evidence claim, we determine if each element of the charged offenses is supported by the required quantum of evidence. *See Spanish Fork City v. Bryan,* 1999 UT App 61, ¶ 5, 975 P.2d 501. Because the trial court, in finding defendant guilty of the charged offenses, made findings and conclusions regarding each element, defendant's claims are preserved.

serts that some of the facts the State contends he failed to marshal are irrelevant. Defendant further contends that marshaling is unnecessary because he is challenging the trial court's legal conclusions rather than its factual findings.

■ ¶ 14 Defendant, we believe, has adequately marshaled by citing the evidence and testimony of J. Henry Larsen and Douglas King. Further, defendant essentially argues that based on undisputed evidence, the trial court erred in finding him guilty. Therefore, we reject the State's claim that defendant failed to marshal the evidence and reach the merits of defendant's claims. In doing so, we consider only the evidence submitted at trial.

## Negligent Homicide

¶ 15 Defendant first challenges the sufficiency of the evidence supporting his negligent homicide conviction. Defendant claims that there was insufficient evidence to show that his conduct was criminally negligent, that his conduct was the proximate cause of Shinners–Little's death, and that Shinners–Little's death was a foreseeable consequence of his actions. Defendant asserts that the trial court erred in its legal conclusions by failing to concede that defendant's driving could be outside the ordinary standard of care, or simply negligent, without rising to the level of criminal negligence.[5]

5. The trial court found defendant guilty of negligent homicide, explaining:

A factor on that matter is, I think important to note, that Mr. J. Larsen notes that as the light turned green for Mr. Brett Larsen, that he waited a few moments, then he moved into the intersection. Mr. J. Larsen describes the turn as not being slow and not being fast, just a casual, normal turn, and I took it to mean that Mr. Brett Larsen was turning as if it were a clear intersection.

Mr. J. Larsen, sitting behind Mr. Brett Larsen, can see the other motor vehicle approaching the intersection, so it's clear that that vehicle was visible. And finally, Deputy Stratford tells us that Mr. Brett Larsen's truck tire was moving at the time of the impact, indicating that he made no effort to stop.

Now, with those findings of fact, when we come to the standard that must be applied, which both sides have recited. Should Mr. Brett Larsen have been aware of a substantial and unjustifiable risk that he was taking or

¶ 16 The State argues that the trial court correctly rejected the notion that defendant's actions constituted simple negligence, finding that his actions constituted a gross deviation from the standard of care. The State further asserts that the circumstances surrounding the collision present sufficient evidence to sustain defendant's negligent homicide conviction. Specifically, the State argues that the following facts combine to show that defendant's actions were criminally negligent: he had an open container in his truck; he had illegally consumed alcohol prior to the collision; his truck lights were not on; he failed to activate his turn signal before turning; and he was inattentive in turning when traffic was not clear.

¶ 17 Section 76–5–206(1) of the Utah Code provides: "Criminal homicide constitutes negligent homicide if the actor, acting with criminal negligence, causes the death of another." Utah Code Ann. § 76–5–206(1) (1999). A person acts with criminal negligence

when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise in

which might occur when he took that risk? And was this risk of such a nature and degree that his failure to perceive it constituted a gross deviation from the standard of care that an ordinary person would exercise in all the circumstances as viewed from Mr. Brett Larsen's standpoint?

And I have to say, though it's been ably argued and the facts presented, it's clear to me that this is a gross deviation from the standard of care that an ordinary person has to exercise. Were that not true, it would not be possible to drive a motor vehicle on any roadway that ever intersected with another roadway.

I mean, Mr. Brett Larsen's actions today, due to these facts, has to be a gross deviation. Essentially, he drove into the intersection, turned left, and made no perceptive view of the oncoming traffic. And if one were to do that, and it would just be a simple deviation or to be the normal procedure, it could not be tolerated in any way. So on the count criminal—negligent homicide, I find the Defendant guilty based on the facts presented.

all the circumstances as viewed from the actor's standpoint.

*Id.* § 76–2–103(4).

¶ 18 Conduct is not criminally negligent unless it constitutes a " 'gross deviation' from the standard of care exercised by an ordinary person." *State v. Standiford,* 769 P.2d 254, 267 (Utah 1988). "[O]rdinary negligence, which is the basis for a civil action for damages, is not sufficient to constitute criminal negligence." *Id.* In *State v. Warden,* 784 P.2d 1204 (Utah Ct.App.1989),[6] this court explained, " '[m]ere inattention or mistake in judgment resulting even in death of another is not criminal unless the quality of the act makes it so.' " *Id.* at 1207; *see State v. Hallett,* 619 P.2d 335, 338 (Utah 1980) ("The 'negligence' required in this context must be more than the lack of ordinary care and precaution; it must be something more than mere inadvertence or misadventure, but rather a recklessness or indifference incompatible with a proper regard for human life."); *see also State v. Hallett,* 619 P.2d 335, 338 (Utah 1980) (upholding negligent homicide conviction when defendant pushed stop-sign to ground at two-way stop intersection thereby setting "a trap fraught with danger and possible fatal consequences").

¶ 19 The pertinent facts in this case are not disputed. Defendant made a left turn at an intersection and collided with a car that clearly had the right-of-way. The car defendant collided with was visible to the driver stopped behind defendant at the intersection. Defendant made the turn at a normal rate of speed and did not apply his brakes or try to swerve before the car collided with him. It is not clear whether defendant had his lights on or his turn signal activated. Defendant had a small amount of alcohol in his system.

¶ 20 We find unpersuasive the State's argument that the surrounding circumstances combine to demonstrate a "gross deviation." The State fails to show any causal connection between the collision and the alcohol, unlit headlights, or defendant's failure to activate his turn signal. The trial court did not make any findings regarding the presence of alcohol, the unlit headlights, or turn signal relating to the negligent homicide charge. The definition of criminal negligence requires a causal connection between defendant's actions and the ultimate result. *See State v. Warden,* 813 P.2d 1146, 1151–52 (Utah 1991) (explaining doctor's indications to parents that baby did not need medical attention, failure to check baby's condition after birth, and failure to hospitalize baby in part because he lacked malpractice insurance combined to cause death of baby and showed criminal negligence). Because there is no nexus between the collision and the presence of alcohol, the absence of headlights, or inactivated turn signal, these facts do not support the trial court's determination that defendant was criminally negligent.

¶ 21 In this case, defendant's conduct, while apparently negligent, does not rise to the level of criminal negligence. Defendant's conduct is more accurately characterized as a serious mistake in judgment. The facts presented at trial do not indicate that defendant's actions were undertaken recklessly or with an indifference to human life, nor does the quality of defendant's act lead to the conclusion that his actions were criminal. Rather, defendant simply failed to see an oncoming car which was visible to other drivers as he made a left turn, with tragic consequences.

¶ 22 Accordingly, we conclude that the State's evidence is insufficient to establish beyond a reasonable doubt that defendant's conduct constituted a "gross deviation" from the standard of care. Because we conclude that defendant was not criminally negligent, we do not reach defendant's argument that his actions were not the proximate cause of Shinners–Little's death.

### Failure to Yield

¶ 23 Defendant next challenges the sufficiency of the evidence supporting his conviction for failure to yield, arguing there was no evidence presented at trial showing he acted

---

6. This Court's decision in *Warden,* holding that the facts were not sufficient to support defendant's conviction, was reversed by *State v. Warden,* 813 P.2d 1146 (Utah 1991), in which the Utah Supreme Court reviewed the same facts and upheld the jury verdict.

with the required mental state. Defendant asserts that the failure-to-yield statute requires knowledge of a hazard. The State argues that it is not required to prove intent under the statute and that the evidence is sufficient to support defendant's conviction.

¶ 24 Section 41–6–73 of the Utah Code provides: "The operator of a vehicle intending to turn to the left shall yield the right-of-way to any vehicle approaching from the opposite direction which is so close to the turning vehicle as to constitute an immediate hazard." Utah Code Ann. § 41–6–73 (1998). Contrary to defendant's assertion, section 41–6–73 does not suggest that defendant must have knowledge of the vehicle posing the immediate hazard. *See id.*

¶ 25 Traffic violations are regulatory type crimes or *malum prohibitum* offenses for which strict liability is generally imposed. *See Peck v. Dunn,* 574 P.2d 367, 370 (Utah 1978). In *Greaves v. State,* 528 P.2d 805 (Utah 1974), the Utah Supreme Court stated the purpose of the Motor Vehicle Code is to "govern the safety of the use and operation of motor vehicles" and that a defendant who does an act prohibited by the Code is presumed to intend the natural consequences of his act, so that "it is the intentional doing of the act prohibited by law which constitutes the offense." *Id.* at 807.

¶ 26 The evidence presented at trial established that defendant made a left turn through an intersection and collided with an oncoming car that had the right-of-way. Defendant clearly intended to make the left turn. Further, King's car—regardless of whether defendant saw it—constituted an immediate hazard. Because defendant intended to do the prohibited act, the trial court's determination that he failed to yield the right-of-way was not against the clear weight of the evidence. As such, we conclude that defendant's conviction for failure to yield was supported by sufficient evidence.

## CONCLUSION

¶ 27 In sum, we conclude the evidence is insufficient to show beyond a reasonable doubt that defendant's conduct constituted a "gross deviation" from the standard of care. Therefore, we reverse defendant's conviction for negligent homicide. Because mens rea is not required for traffic violations, sufficient evidence supported defendant's conviction for failure to yield. Accordingly, we affirm defendant's conviction for failure to yield.

¶ 28 WE CONCUR: NORMAN H. JACKSON, Associate Presiding Judge, and JAMES Z. DAVIS, Judge.