2008 UT App 235

**KENDALL INSURANCE, INC.; Shirley Ann Morgan; and Charles Morgan, Plaintiffs and Appellees,**

v.

**R & R GROUP, INC.; and Rick B. Stanzione, Defendants and Appellants.**

No. 20060570–CA.

Court of Appeals of Utah.

June 19, 2008.

L. Andrew Briney, Spanish Fork, for Appellants.

Noel S. Hyde, South Ogden, for Appellees.

Before THORNE, Associate P.J., BENCH and McHUGH, JJ.

## OPINION

THORNE, Associate Presiding Judge:

¶ 1 Defendants R & R Group, Inc. (R & R Group) and Rick B. Stanzione appeal from the trial court's final order and judgment rescinding the parties' contract for the sale of the Kendall Insurance Agency (the Kendall Agency), awarding ownership and control of the agency and attorney fees to Defendants, and awarding Plaintiffs Shirley Ann and Charles Morgan a judgment against Defendants in the amount of $75,000. Defendants also appeal from the trial court's decision denying Defendants' rule 60(b) motion. We affirm.

## BACKGROUND

¶ 2 In March 2002, Stanzione, who owns and operates the R & R Group, an insurance agency, purchased the Kendall Agency from Max Kendall. Defendants operated the Kendall Agency and, in early 2003, began converting the Kendall Agency's paper client files to an automated system.

¶ 3 In August 2003, Defendants began negotiations with Plaintiffs relating to the sale and transfer of the recently purchased Kendall Agency and its related assets. Plaintiffs employed Paul Nelson, an experienced insurance agent, to assist them in the negotiation and management of the Kendall Agency. During negotiations, Stanzione made repre-

sentations to Plaintiffs and Nelson regarding the value and composition of the Kendall Agency. Plaintiffs decided to purchase the agency and paid Defendants $75,000 as a down payment. The parties signed a written agreement, effective September 1, 2003, transferring the Kendall Agency from Defendants to Plaintiffs. For several months after acquiring the Kendall Agency, Plaintiffs continued to operate out of the same business location as Defendants.

¶ 4 Approximately three months after the transfer of the Kendall Agency, Plaintiffs determined that the actual value and composition of the Kendall Agency was significantly different than Stanzione had represented in August 2003. Plaintiffs requested that Defendants reform the contract and suspended further payments. Defendants refused to make any modifications to the contract and, in December 2003, demanded its full and immediate performance. In December 2003 and January 2004, Plaintiffs continued their suspension of payments and moved the location of the Kendall Agency to a premises separate from Defendants' business premises. In January 2004, Stanzione unilaterally redirected the Kendall Agency's mail to Defendants' business premises.

¶ 5 On February 24, 2004, Plaintiffs filed a complaint alleging various causes of action, including mutual mistake of fact, and requesting the equitable remedy of rescission. On March 24, 2004, Defendants filed an answer and counterclaim, which included a request for return of the Kendall Agency to Defendants. On April 9, 2004, Defendants filed a motion for order to show cause seeking, in part, possession and operational control of the Kendall Agency and its assets. In June 2004, the trial court held a hearing on Defendants' motion and ordered that operational control of the Kendall Agency be returned to Defendants.

¶ 6 On April 4, 2005, Defendants filed another motion for order to show cause alleging that Plaintiffs had failed to comply with the trial court's previous order. On August 31, 2005, the trial court held an evidentiary hearing on Defendants' motion. The parties agreed to continue the case for a bench trial preserving all testimony and exhibits for tri-

al. A two-day bench trial was held. Afterward, the court found that a mutual mistake of fact relating to the value and composition of the Kendall Agency existed at the time that the parties negotiated the sale of the agency, and concluded that the contract should be rescinded as a matter of equity. The court further concluded that based on the rescission of the contract Plaintiffs should recover the $75,000 down payment used to purchase the Kendall Agency. The trial court also awarded Defendants, who had sought and obtained a return of the Kendall Agency and its assets, attorney fees and related costs in an amount not to exceed $17,500. The trial court stated that the actual amount of attorney fees and costs to be awarded Defendants may be determined upon submission of appropriate affidavits to be submitted within ten days after the entry of the court's order.

¶ 7 On May 26, 2006, Defendants filed a rule 60(b) motion requesting relief from their obligation to refund $75,000 to Plaintiffs. Defendants asserted that they should be relieved from such judgment because the trial court failed to make findings based on the motion for order to show cause that was merged with the bench trial proceedings. On August 2, 2006, the trial court denied Defendants' rule 60(b) motion, finding no reason justifying relief. Defendants appeal.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 8 Defendants argue that the trial court erred by finding as a matter of law that there was a mutual mistake of fact as to the value of the Kendall Agency at the time the parties signed the purchase agreement because the agreement contained an "as is" clause. Conclusions of law are accorded no particular deference and are reviewed for correctness. *See American Towers Owners Ass'n v. CCI Mech., Inc.*, 930 P.2d 1182, 1188 (Utah 1996); *see also Warner v. Sirstins*, 838 P.2d 666, 669 (Utah Ct.App.1992).

■ ¶ 9 Defendants also argue that there is insufficient evidence to support the trial court's finding that there was a mutual mistake of fact. " 'When reviewing a bench trial for sufficiency of evidence, we must sustain

the trial court's judgment unless it is against the clear weight of the evidence [presented at trial], or if the appellate court otherwise reaches a definite and firm conviction that a mistake has been made.'" *State v. Andreason,* 2001 UT App 395, ¶ 4, 38 P.3d 982 (alteration in original) (footnote omitted) (quoting *State v. Larsen,* 2000 UT App 106, ¶ 10, 999 P.2d 1252).

■ ¶ 10 Defendants next argue that the trial court erred by failing to make findings of fact and conclusions of law relative to the issues raised in Defendants' motion for order to show cause. "'Questions about the legal adequacy of findings of fact and the legal accuracy of the trial court's statements present issues of law, which we review for correctness, according no deference to the trial court.'" *Mardanlou v. Ghaffarian,* 2006 UT App 165, ¶ 8, 135 P.3d 904 (quoting *Shar's Cars, LLC v. Elder,* 2004 UT App 258, ¶ 12, 97 P.3d 724), *cert. denied,* 150 P.3d 58 (Utah 2006).

■ ¶ 11 Defendants further claim that the trial court erred in denying their rule 60(b) motion for relief from judgment. This court reviews the denial of a motion to set aside pursuant to rule 60(b) of the Utah Rules of Civil Procedure for abuse of discretion. *See Franklin Covey Client Sales, Inc. v. Melvin,* 2000 UT App 110, ¶ 9, 2 P.3d 451. On appeal from a rule 60(b) order, the reviewing court addresses only the propriety of the denial or grant of relief and does not reach the merits of the underlying judgment. *See id.* ¶ 19.

■ ¶ 12 Lastly, Defendants assert that the trial court erred by capping attorney fees and costs to an amount not to exceed $17,500 and therefore failing to award Defendants, the prevailing party, all attorney fees according to the parties' promissory note which provides that "the defaulting party agrees to pay all costs incurred in the enforcement of this Note and the Security Agreement." "'The standard of review on appeal of [the amount of] a trial court's award of attorney fees is patent error or clear abuse of discretion.'" *Jensen v. Sawyers,* 2005 UT 81, ¶ 127, 130 P.3d 325 (alteration in original)

(quoting *Valcarce v. Fitzgerald,* 961 P.2d 305, 316 (Utah 1998)).

## ANALYSIS

### I.  Doctrine of Mutual Mistake

**A.  Application of Mutual Mistake Doctrine to Integrated Contract**

¶ 13 Defendants argue that the mutual mistake of fact doctrine cannot, as a matter of law, support the equitable rescission of an integrated contract, and as a result, the trial court erred in considering the doctrine and concluding that rescission was appropriate. In support of this argument, Defendants cite *Maack v. Resource Design & Construction, Inc.,* 875 P.2d 570 (Utah Ct.App.1994), for the proposition that only affirmative fraud and not mutual mistake can support the equitable rescission of an integrated contract. Defendants misinterpret the *Maack* decision.

¶ 14 In *Maack,* the Maacks appealed the trial court's grant of summary judgment against them based on its conclusion that an agreement's integration clause precluded consideration of any statements not expressly included in the agreement. *See id.* at 574–75. This court discussed fraud as an exception to the contract's "as is" and integration clauses, and analyzed each of the Maacks' claims for negligent misrepresentation, fraudulent nondisclosure, and fraudulent concealment in light of any relevant parol evidence without deciding whether each specific claim was an exception to the "as is" and integration clauses because the Maacks failed to brief this issue. *See id.* at 575. In so doing, this court made reference to the holding in *Kaye v. Buehrle,* 8 Ohio App.3d 381, 457 N.E.2d 373, 376 (1983), that an as is clause bars a claim for fraudulent nondisclosure but permits claims for "positive" fraud. *See Maack,* 875 P.2d at 575. This court's reference to *Kaye* does not, without more, support Defendant's proposition that only affirmative fraud can support the equitable rescission of an integrated contract. Thus, we do not conclude that this court's decision in *Maack* precludes rescission of an integrated contract on the basis of mutual mistake.

¶ 15 To the contrary, Utah courts have consistently recognized the doctrine of mutual mistake of fact as a basis for equitable rescission of a contract that appears on its face to be an integrated contract.[1] *See, e.g., West One Trust Co. v. Morrison,* 861 P.2d 1058, 1061 (Utah Ct.App.1993) (" '[W]hat appears to be a complete and binding integrated agreement . . . may be voidable for fraud, duress, *mistake* or the like, or it may be illegal.' " (emphasis added) (omission in original) (quoting *Union Bank v. Swenson,* 707 P.2d 663, 665 (Utah 1985))). Because an integrated contract may be rescinded on the basis of mutual mistake of fact, we conclude that the trial court did not err in considering the mutual mistake doctrine.[2] Likewise, the trial court did not err in considering parol evidence. *Cf. Grahn v. Gregory,* 800 P.2d 320, 327 n. 8 (Utah Ct. App.1990) ("Mutual mistake is an exception to the general rule that parol evidence may not contradict, vary, or add to a deed.").

B. Insufficient Evidence to Support Mutual Mistake

¶ 16 Defendants next argue that there is insufficient evidence in the record to justify the trial court's finding that there was a mutual mistake as to the value of the business at the time the parties signed the contract. In challenging the trial court's finding of mutual mistake relating to the business value of the Kendall Agency, Defendants have failed to marshal the evidence. The duty to marshal the evidence " 'requires an appellant to marshal all of the facts used to support the trial court's finding and then show that these facts cannot possibly support the conclusion reached by the trial court, even when viewed in the light most favorable to the appellee.' " *Bluffdale Mountain Homes, LC v. Bluffdale City,* 2007 UT 57, ¶ 52, 167 P.3d 1016 (quoting *Wayment v. Howard,* 2006 UT 56, ¶ 9, 144 P.3d 1147).

Instead of marshaling the evidence in support of the trial court's finding, Defendants cite only to the evidence offered at trial that supports their position. " 'An appellant may not simply cite to the evidence which supports his or her position and hope to prevail.' " *Id.* (quoting *Wayment,* 2006 UT 56, ¶ 9, 144 P.3d 1147).

¶ 17 Although Defendants' failure to marshal the evidence is a sufficient basis for affirming, we also determine that sufficient evidence exists to support the trial court's finding that a mutual mistake of fact relating to the value and composition of the Kendall Agency and its book of business existed at the time the parties negotiated the sale of the agency. In early 2003, Defendants began converting the paper client files of the Kendall Agency to an automated system in which the management and administration of all client matters would be handled. In August 2003, the parties began negotiations relating to the sale and transfer of the Kendall Agency and its assets. At this time, the conversion process was still ongoing. In the three months succeeding the transfer of the Kendall Agency to Plaintiffs, Plaintiffs and Nelson perceived that the actual value and composition of the agency was significantly different than the representations Stanzione made in August 2003. The differences included commission income that was significantly less than what Stanzione had represented and the fact that many of the client files Stanzione identified as being current and active in the Kendall Agency's book of business were not accurately reflected in the automated database to which the files were being converted.

¶ 18 The evidence relating to the state of the client files during the negotiation period and to the differences reflected in the automated database after the sale is sufficient to

---

1. "Mutual mistake of fact makes a contract voidable and is a basis for equitable rescission." *Robert Langston, Ltd. v. McQuarrie,* 741 P.2d 554, 557 (Utah Ct.App.1987) (citation omitted).

2. The dissent addresses the issue of risk allocation as it pertains to rescission of a contract based on mutual mistake and would remand for further findings. *See infra* ¶¶ 36–40. While the dissent is correct that the parties have the ability

to control risk, it is unclear whether any such evidence was presented to the trial court. It would be improper to remand for new trial on issues the parties did not raise in the first trial. The approach the dissent suggests may well have been a good one, however, we address the issues as framed by the parties. Accordingly, we see no error as presented.

support the trial court's mutual mistake finding. Thus, we affirm the trial court's finding that a mutual mistake of fact relating to the value and composition of the Kendall Agency and its book of business existed at the time the parties entered into the contract to sell the Kendall Agency.

## II. Motion for Order to Show Cause

¶ 19 Defendants argue that the trial court erred by failing to make findings of fact and conclusions of law relative to Defendants' motion for order to show cause, and as such did not address the order to show cause issues presented at trial.[3] " '[I]n order to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue.' " *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (alterations in original) (quoting *Brookside Mobile Home Park, Ltd. v. Peebles*, 2002 UT 48, ¶ 14, 48 P.3d 968). "This requirement puts the trial judge on notice of the asserted error and allows for correction at that time in the course of the proceeding." *Id.* "Issues that are not raised at trial are usually deemed waived." *Id.*

¶ 20 Defendants did not raise the alleged errors in the trial court's findings of fact and conclusions of law sufficiently to put the court on notice of those errors. Defendants raised their objections to the sufficiency of the court's findings of fact and conclusions of law in their rule 60(b) motion. In this motion, Defendants' argued that the trial court made a mistake sufficient to justify relief from judgment by failing to make findings of fact and conclusions of law related to the order to show cause issues. Defendants argued that the trial court should relieve Defendants from their obligation under the judgment based on this mistake. Although Defendants' argument appears to incorporate a challenge to the trial court's findings, Defendants made it clear in their reply to Plaintiffs' objection that Defendants were "not seeking to have the findings of fact and conclusions of law modified."

¶ 21 Despite the fact that Defendants made an objection to the trial court's findings in their rule 60(b) motion by arguing that the trial court *should have* made findings on the order to show cause issues, Defendants did not inform the court that it needed to *correct* any error by ruling on the order to show cause or otherwise modify or make additional findings. Plaintiffs in their response to Defendants' rule 60(b) motion argued that Defendants' motion was really a challenge to the findings of the court, which may only be done within ten days after entry of the judgment pursuant to rule 52(b) of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 52(b). In response, Defendants informed the court that it need not modify the findings and should only relieve Defendants from their obligation to refund Plaintiffs' down payment. Specifically, Defendants stated that "Defendants are only seeking a relief from judgment under [r]ule 60(b) and in accordance with the relevant rule thereof— they are not seeking any alteration of the previous judgment under other rules."

¶ 22 As a result, the trial court considered the motion, made no modifications or additional findings to its findings of fact and conclusions of law, and ultimately denied the motion. The trial court denied the motion stating that "the [c]ourt finds there is no reason justifying the relief sought by [Defendants]. The [c]ourt has previously entered its findings and conclusions following the bench trial in this case. If those findings and conclusions are in error, that determination will be made by the higher court." Because Defendants failed to raise this issue in such a way as to afford the trial court an opportunity to correct the alleged error, we conclude that Defendants have waived any argument regarding the trial court's failure to make findings of fact and conclusions of law on the order to show cause issues presented at trial. *See 438 Main St.*, 2004 UT 72, ¶ 56, 99 P.3d 801. Thus, we need not consider whether the trial court's findings of fact and conclusions of law resulted in any prejudice to Defendants.

---

3. The trial court held an evidentiary hearing on Defendants' motion for order to show cause wherein the parties agreed to continue the order to show cause issue for a bench trial. As a result, the trial court merged the order to show cause issues with the other trial issues.

### III. Rule 60(b) Motion for Relief from Judgment

¶ 23 Defendants argue that the trial court failed to properly consider the arguments raised in their rule 60(b) motion. At the trial court level, Defendants argued, in Defendants' Memorandum in Support of 60(b) Motion for Relief From Judgment of Order, that

Defendants should be relieved of their obligation under this court's order to refund monies to ... Plaintiffs for the following reasons:

1. Rule 60(b) of the Utah Rules of Civil Procedure states that "[o]n motion and upon such terms as are just, the court may in furtherance of justice relieve a party ... from a final judgment, order, ... for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason justifying relief from the operation of the judgment...."

2. Defendants are praying for relief under either or both subsections (1) and (6) because the final order in this case did not make any accounting for prayers for relief requested under Defendants' Order to Show Cause.... This constitutes legal error under subsection (1) of [r]ule 60(b) as argued below; this also constitutes a substantial reason to justify Defendants' prayer under subsection (6) of [r]ule 60(b) as argued below.

3. Specifically, Defendants' order to show cause prayed for Plaintiffs to be held in contempt for failing to turn over the book of business as required by this court's previous ... order, for attorney[ ] fees for having to bring that motion, and for damages resulting therefrom.

. . . .

6. As the prevailing party to this lawsuit, [Defendants] lost not only a business (which was generating a healthy monthly income) because of Plaintiffs' alleged contemptuous and fraudulent practices, they are now required to return the down payment monies made by ... Plaintiffs for the business that Plaintiffs cannibalized before returning it to ... Defendants.

. . . .

10. Failing to make findings of fact and conclusions of law on issues surrounding the order to show cause therefore deprived ... Defendants of having monies awarded in their favor that would have offset their obligation to refund ... Plaintiffs' down payment as required by this court's order. Therefore, as the prevailing parties, they should not be obligated to pay any monies to ... Plaintiffs and they should be relieved from their obligation to do so under this court's ... judgment and order.

(Fourth omission in original.)

¶ 24 The court denied Defendants' motion stating that "[t]he [c]ourt finds there is no reason justifying the relief sought by ... [D]efendant[s]. The [c]ourt has previously entered its findings and conclusions following the bench trial in this case. If those findings and conclusions are in error, that determination will be made by the higher court."

¶ 25 On appeal, Defendants perfunctorily make two arguments related to the court's failure to consider the rule 60(b) motion. First, Defendants argue that the court erred by failing to even consider the merits of the motion and instead interpreted the motion as a request for new or additional findings of fact and conclusions of law. Next, Defendants argue that their request for relief was meritorious and should have been granted because Defendants prevailed in their request to have the Kendall Agency returned to them but did not receive the value of the revenue generated by the business, i.e., $110,000 in revenue generated after transfer but prior to the return of the business to Defendants, and were instead ordered to return the $75,000 down payment to Plaintiffs. We are not persuaded by either argument.

¶ 26 First, it is clear from other language in the trial court's decision that it did in fact consider and evaluate the merits of Defendants' rule 60(b) motion and found "there is no reason justifying the relief sought by.... [D]efendant[s]." Second, the trial court, in support of its order that Defendants repay $75,000 to Plaintiffs, specifically found that:

In connection with their acquisition of the Kendall Agency, [Plaintiffs] made a series of initial payments to [Defendants] in August and September 2003, the aggregate

amount of which payment was $74,768.00. Other amounts alleged by [Plaintiffs] to exceed $10,300.00 were paid by [Plaintiffs] to [Defendants] or advanced to the Kendall Agency between September 1, 2003 and August 2004.

¶ 27 In light of this finding, evidence of business losses,[4] and exhibits introduced at trial and attached to the court's final order and judgment,[5] we conclude that the trial court implicitly found that Plaintiffs did not make any profits from the business and as such Defendants claim for $110,000 in lost net revenue was too speculative and inadequately supported. "Unstated findings can be implied if it is reasonable to assume that the trial court actually considered the controverted evidence and necessarily made a finding to resolve the controversy, but simply failed to note on the record the factual determination it made." *Hill v. Hill,* 869 P.2d 963, 965 (Utah Ct.App.1994) (internal quotation marks omitted).

¶ 28 Contrary to Plaintiff's argument, it is reasonable to assume that the trial court actually considered the evidence which was presented at trial, and in fact, exhibits therefrom were attached to the court's final judgment and order. It appears that the court simply failed to record the factual determination that no profits were made. Moreover, it is clear from the court's memorandum decision that it did consider Defendants' rule 60(b) motion on its merits. We conclude that the evidence contained in the record adequately supports the trial court's findings and conclusions. We also conclude that the trial court properly denied the motion.

### IV. Attorney Fees

¶ 29 Lastly, Defendants assert that the trial court erred by capping attorney fees and costs at $17,500 when the parties' promissory note provides that *all* fees are to be reimbursed to the prevailing party. The tri-

al court in its ruling awarded Defendants attorney fees and related costs reasonably incurred in an amount not to exceed $17,500, with the actual amount to be determined upon the submission of appropriate affidavits to the court and Plaintiffs within ten days after the entry of the order. Plaintiffs claim that Defendants failed to request the allowance of any attorney fees in this case and therefore have waived the right to recover such fees. Indeed, Defendants did not submit a claim for attorney fees, and as a result, the trial court did not award or determine an actual amount of attorney fees or costs to Defendants. Because Defendants did not submit a claim for attorney fees, they waived the attorney fee issue, and we do not address it.

### CONCLUSION

¶ 30 Utah courts have consistently recognized the doctrine of mutual mistake as a basis for equitable rescission of an integrated contract. The evidence relating to the negotiations between the parties to the sale of the Kendall Agency supports the trial court's finding that a mutual mistake of fact relating to the value and composition of the Kendall Agency existed at the time the parties entered into the sales contract. Thus, we conclude that the trial court did not err in rescinding the contract on the basis of mutual mistake.

¶ 31 In their rule 60(b) motion, Defendants objected to the sufficiency of the trial court's findings but did not inform the court that it needed to rule on any outstanding order to show cause issues or make additional findings. Instead, Defendants argued only for relief from judgment based on the court's alleged mistake. Thus, we conclude that Defendants did not raise the issues pertaining to the trial court's findings of fact and conclusions of law sufficiently to afford the court an opportunity to correct the alleged error and

---

4. At trial, Defendants presented evidence that they did not make a profit from the business and that, instead, they made additional advances to the business in excess of $42,000.

5. Three documents were attached to the court's final order and judgment. The first document calculated the "Loan amount to Kendall Insur-ance from Shirley Ann Morgan 6/24/04–8/12/04" and "Commissions Received 6/24/04–8/12/04." The second document calculated "Commissions for Policies written after June 24, 2004" and "Expenses from 6/24/04–8/12/04." The final document listed "Personal money loaned to Kendall Insurance from 8/03 to 4/04."

that, as such, waived any argument regarding the inadequacy of the trial court's findings. Likewise, because Defendants did not submit a claim for attorney fees, they waived the attorney fee issue and we do not address it.

¶ 32 Finally, because the trial court considered Defendants' rule 60(b) motion on its merits, and Defendants point to no other errors, we affirm the trial court's decision to deny the motion. Affirmed.

¶ 33 I CONCUR IN THE RESULT: RUSSELL W. BENCH, Judge.

McHUGH, Judge, (concurring and dissenting):

¶ 34 Defendants argue that the trial court erred in finding a mutual mistake of fact as to the value and composition of the Kendall Agency. That contention is based both on Defendants' position that the contract itself precludes the finding of mistake on this issue and on the ground that the evidence does not support the trial court's finding of mistake. The majority rejects both arguments.

¶ 35 While I agree that Defendants did not meet their obligation to marshal the evidence in connection with their challenge to the trial court's findings of fact, I believe that parties to a contract are free to allocate the risk of unknown or uncertain facts in their agreement. Therefore, I respectfully dissent from the majority's ruling and from the views expressed by Judge Thorne.

> A party bears the risk of a mistake when
>
> (a) the risk is allocated to him by agreement of the parties, or
>
> (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or
>
> (c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so.

Restatement (Second) of Contracts § 154 (1981).

¶ 36 Without limitations on the right of a party to claim mistake, the ability to contract when uncertain or subjective issues—such as value—are involved would be seriously impaired. *See* 27 Richard A. Lord, *Williston on Contracts* § 70:77, at 431 (4th ed. 2003) ("The ultimate value of the object of a contract involves a measure of uncertainty, and all parties to a contract assume the risk as to value. Such mistakes as to value are not grounds for rescission."). The law permits contracting parties to assign the risk of such subjectivity or uncertainty. Indeed, this court refused to rescind a real estate purchase contract where the defendants were aware that they had only limited knowledge of the property's value at the time they entered the contract, but proceeded anyway. *See Klas v. Van Wagoner,* 829 P.2d 135, 140–41 & n. 8 (Utah Ct.App.1992) (citing favorably Restatement (Second) of Contracts § 154 (1981)); *see also State v. Patience,* 944 P.2d 381, 387–88 (Utah Ct.App.1997) ("Under contract law, a party may not rescind an agreement based on mutual mistake where that party bears the risk of mistake.").

¶ 37 Here, the evidence is uncontested that the transition from paper client files to an electronic database was not complete by the time of the sale of the Kendall Agency. Nevertheless, the parties went forward with the transaction and entered into a Purchase Agreement that states, in part:

> Copies of the latest information concerning the business activities and financial affairs of Kendall Insurance Agency Inc. have been made available to and have been inspected by Buyer to its complete and total satisfaction incident to which Buyer has received the professional advi[c]e and expertise of a certified public accountant retained by Buyer.

Defendants argue that this provision (the Satisfaction Clause) [1] is sufficient to preclude Plaintiffs from asserting mistake as a basis for rescinding the contract.

¶ 38 The Satisfaction Clause may well have been an attempt to allocate to Plaintiffs the risk that the value of the Kendall Agency

1. Defendants refer to this paragraph as an "as is" provision. Because there is no language in the contract that expressly states that Plaintiffs are accepting the Kendall Agency "as is," I refer to the provision as "the Satisfaction Clause."

might be lower than either party believed. *See* Restatement (Second) of Contracts § 154(a). Alternatively, this clause may evidence an acknowledgment by Plaintiffs that they deemed their limited knowledge on this issue sufficient, thereby negating any later claim of mistake. *See id.* § 154(b); *see also Deep Creek Ranch, LLC v. Utah State Armory Bd.*, 2008 UT 3, ¶ 18, 178 P.3d 886 (holding that, under contract, Armory assumed the risk as to [Utah General Services Agency]'s subsequent approval); *Klas*, 829 P.2d at 140–41 & n. 8 (concluding there was no mistake where buyers proceeded with purchase of property knowing that their knowledge regarding its value was limited).

¶ 39 From the record before us, the intent of the parties with respect to the Satisfaction Clause is uncertain. Consequently, I would remand for further findings on (1) whether it was the intent of the parties, by virtue of the Satisfaction Clause, to allocate to Plaintiffs the risk that the value of the Kendall Agency might be lower than either party thought, *see* Restatement (Second) of Contracts § 154(a); and (2) whether Plaintiffs assumed the risk that the value may be lower than the parties believed by going forward with the transaction despite their limited knowledge on this point, *see id.* § 154(b).[2]

¶ 40 Even assuming that Plaintiffs were entitled to rescission, I am troubled by the trial court's failure to put Defendants, as closely as possible, in the position they were in before the transaction took place. "It must be possible to give relief by way of rescission without serious prejudice to the other party except the loss of his bargain. In other words, it must be possible to put him in status quo." *Klas*, 829 P.2d at 139 (internal quotation marks omitted); *see also 50 W. Broadway Assocs. v. Redevelopment Agency*, 784 P.2d 1162, 1170–71 (Utah 1989) ("Generally, if the parties cannot be put back in status quo, a contract can be rescinded only where the clearest and strongest reason and equity imperatively demand it." (internal quotation marks omitted)).

¶ 41 In this case, both parties sought to terminate the contract, giving ownership of the Kendall Agency back to Defendants. And, both parties were entitled to be returned to their presale position to the extent possible. "The goal of rescission is to restore the status quo that existed prior to the parties' agreement." *Anderson v. Doms*, 2003 UT App 241, ¶ 6, 75 P.3d 925 (internal quotation marks omitted); *see also Ong Int'l (U.S.A.) Inc. v. 11th Ave. Corp.*, 850 P.2d 447, 457 (Utah 1993). How or whether that goal can be accomplished is within the sound discretion of the trial court. *See Ong Int'l*, 850 P.2d at 457; *Anderson*, 2003 UT App 241, ¶ 6. Despite this deference, remand is appropriate where return of the parties to their prior positions is not accomplished to the extent possible under the circumstances. *See Robert Langston, Ltd. v. McQuarrie*, 741 P.2d 554, 558 (Utah Ct.App.1987) (holding trial court's order denying return of earnest money erroneous even though contract was rescinded).

¶ 42 Here, Defendants argue that they were not made whole because the value of the business declined by approximately $110,000 during the time it was under the control of Plaintiffs. Defendants raised this issue in their second order to show cause, but agreed that it could be considered as part of the bench trial on the merits. After trial, the court did not enter any findings of fact or conclusions of law directly related to that issue. From the findings that were entered, it appears that the trial court agreed that the value of the business had suffered, but that "[t]he actions of both Plaintiffs and Defendants, including their communications with third parties, clients, and insurance agencies, were detrimental to and impaired the relationships which had been established previously through the operations of the Kendall Agency."

¶ 43 In Defendants' subsequent rule 60(b) motion, they sought relief from the trial court's decision. Rather than seeking addi-

---

2. The majority holds that Defendants did not argue allocation of risk to either the trial court or this court. *See supra* ¶ 15 n. 2. I respectfully disagree. It is my view that Defendants' argument—that the Satisfaction Clause of the con-

tract foreclosed the possibility of a claim of mutual mistake as to value—adequately presented the issue of whether the contract was intended to allocate that risk to Plaintiffs.

tional findings, Defendants asked that they be permitted to retain the $75,000 down payment as an offset against the devaluation of the Kendall Agency caused by Plaintiffs. The trial court denied Defendants' request. I believe that Defendants' rule 60(b) motion was well taken because the failure to make restitution to Defendants for the portion of the devaluation caused by Plaintiffs was error. *Cf. Breuer–Harrison, Inc. v. Combe,* 799 P.2d 716, 731 (Utah Ct.App.1990) (" 'In the case of a rescission, the buyers are entitled to be returned to the status quo and to recover the payments made on the contract, less the fair rental value of the premises for the time they had possession thereof.' " (quoting *Dugan v. Jones,* 724 P.2d 955, 957 (Utah 1986))). To return the parties as closely as possible to the status quo, it is appropriate to make Defendants bear the losses caused by their behavior, but also to require Plaintiffs to bear that portion of the damage to the business for which they are responsible. Thus, I would remand for spe-

cific findings concerning the amount of value the business lost while the contract was in force and the portion of that loss attributable to each party. For example, if the loss to the business is found to be $110,000 as alleged by Defendants, and each party is found equally responsible for that loss, I would allow Defendants to offset $55,000 against the $75,000 down payment to be returned to Plaintiffs.[3]

¶ 44 For the reasons stated above, I would remand for additional findings concerning the intent of the parties and the amount of and responsibility for any decrease in the Kendall Agency's value.[4]

---

**3.** I use these figures for illustrative purposes only, recognizing that the trial court is in the best position to determine the actual diminution in value, if any, and each party's proportionate responsibility for that loss.

**4.** I agree with the majority that Defendants waived their claim for additional attorney fees by failing to submit an affidavit of such fees as ordered by the trial court.